**Opinion issued December 17, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00588-CR

————————————

**TOMAS JIMENEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

———————————————————————————————————————

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1307334**

———————————————————————————————————————

## OPINION

Appellant Tomas Jimenez was charged by indictment with aggravated sexual assault of an elderly person. The jury found Jimenez guilty and he was sentenced to eighteen years' confinement. On appeal, Jimenez argues that the trial court erred in (1) refusing to submit the lesser-included offenses of indecent

exposure and attempted aggravated sexual assault, (2) denying his motion to quash the indictment, and (3) submitting a mandatory presumption regarding lack of consent and refusing to submit the Texas Penal Code section 2.05 instruction regarding presumptions. We affirm.

## Background

Jimenez, a janitor at Seven Acres Nursing Home, was charged with intentionally and knowingly causing the penetration of the mouth of the complainant, a person 65 years of age or older, with his sexual organ, and without her consent.

The complainant was a resident of Seven Acres Nursing Home. On the day of the incident, Rita Ekome, the certified nursing assistant (CNA) at Seven Acres, entered the complainant's room to serve the complainant lunch. Ekome testified that she found Jimenez in the complainant's room when she arrived. Jimenez was standing in front of the complainant—who was sitting on the bed—with his penis inside the complainant's mouth. Ekome testified that Jimenez's penis was hard, and that he was moving back and forth with his eyes closed. Because his eyes were closed, Jimenez did not immediately realize that Ekome had entered the room. After Ekome made a noise, Jimenez opened his eyes and immediately put his penis back in his pants.

Ekome immediately notified her supervisor and brought her back to the complainant's room, at which point they heard the complainant say "It's my husband, it's my husband." Jimenez had not left the floor when Ekome returned with her supervisor; he was buffing the floor in the hallway outside of the complainant's room. Seven Acres management convened a meeting in which Jimenez's supervisor told him that Ekome reported seeing Jimenez with his penis in the complainant's mouth. Jimenez responded "no, I was scratching," and pointed to his pelvic area.

A medical exam of the complainant revealed no injuries, bruises, pubic hair, or semen on her body. Swabs for DNA were taken from the crotch area of Jimenez's underwear and from the complainant's mouth. A Houston Police Department Crime Laboratory DNA analyst testified that the only DNA found in the complainant's mouth was her own. She also testified that when testing the swab from Jimenez's underwear for a DNA profile, the laboratory obtained a mixture of at least two individuals, and one of the individuals was male and one was "consistent with" the complainant's DNA. The analyst testified that Jimenez "cannot be excluded to the major component of this mixture" and the complainant "could also not be excluded as a possible contributor to the mixture."

On cross-examination, the analyst testified that she could not say with certainty that the complainant's DNA was contained in the mixture and the

3

complainant's DNA profile would occur in 1 in 610,000 people. The analyst testified that she could not determine whether the source of the other DNA found in Jimenez's underwear was sweat, urine, or saliva. The analyst testified that she could not give a timeframe for when the DNA attributed to Jimenez was deposited and it was possible that Jimenez's portion was not deposited at the same time as the other DNA. The analyst also testified that someone could deposit another person's DNA to his own crotch area if he had the other person's DNA on his hand from touching something that contained that person's DNA.

At the time of the incident, the complainant was 84 years old and was married to a man who was not Jimenez. The complainant had Alzheimer's dementia and lived in the nursing home's secured unit for residents with moderate to severe dementia. Access to the unit was restricted and was limited to those who could enter a secure pass code on a keypad at the entry points.

Jimenez's supervisor testified that Jimenez completed special training to work in this unit, that he had a special code to access it, and that Jimenez worked almost exclusively in the unit, which was on the second floor. Jimenez had worked at the nursing home for approximately three years before the incident.

The nursing home's medical director testified that in her medical opinion, the complainant was not capable of appraising the nature of acts in 2010 because "her dementia had progressed to more of a severe state." The complainant's

4

daughter also testified that the complainant was "extremely forgetful" and did not "make a lot of sense" when having conversations, but she recognized her husband when he visited her.

Jimenez filed a pretrial motion to quash the indictment, arguing that its first paragraph was unconstitutional. The indictment's first paragraph stated that sexual assault occurred:

(1) without the Complainant's consent, namely the Defendant was an employee of a NURSING HOME, namely Seven Acres, where the Complainant was a resident, and the Complainant and Defendant were not married to each other;

The first paragraph tracked the definition of "without consent" set forth in section 22.011(b)(11) of the Texas Penal Code, which states that a sexual assault is without consent if:

The actor is an employee of a facility where the other person is a resident, unless the employee and resident are formally or informally married to each other under Chapter 2, Family Code.

TEX. PENAL CODE ANN. § 22.011(b)(11) (West 2011).

Jimenez argued that section 22.011(b)(11) violates the presumption of innocence and relieves the State of the burden to prove the assault was without consent. Counsel argued that section 22.011(b)(11)

pretty much guarantees guilt and it's a conclusive presumption, in our opinion, establishing an element of crime that there wasn't consent. It's presumed there wasn't consent just by the fact that he's an employee there and she's a resident there unless they're married. And

5

our objection is it violates due process and that statute is unconstitutional . . .

The trial court denied the motion to quash.

At the charge conference, Jimenez again argued that section 22.011(b)(11) constituted a "conclusive" presumption on the consent issue that violated due process and objected to its inclusion in the charge. The trial court overruled Jimenez's objection and his request that the charge include an instruction pursuant to section 2.05(a) of the Code of Criminal Procedure "to inform the jury how to deal with [the] presumption." The trial court also denied Jimenez's request to instruct the jury on the lesser-included offenses of attempted aggravated sexual assault and indecent exposure.

During closing, Jimenez's counsel argued that there was reasonable doubt about whether Jimenez committed the sexual assault as described by the CNA. He argued that Jimenez's medical records showed Jimenez was unable to achieve and maintain an erection, and that this undermined Ekome's claim that Jimenez's penis was erect during the alleged assault. He argued that no physical evidence indicated a sexual assault occurred, because Jimenez's DNA was not found in the complainant's mouth. He also pointed out that Jimenez did not flee or otherwise exhibit consciousness of guilt. Thus, Jimenez's defensive theory was to deny that the assault occurred; Jimenez's counsel never suggested that the incident was consensual.

6

## Lesser-Included Offenses

In his first and second points of error, Jimenez argues that the trial court erred in refusing to submit two lesser-included offenses—indecent exposure and attempted aggravated sexual assault.

### A. Applicable Law

An offense qualifies as a lesser-included offense of the charged offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). We employ a two-pronged test in determining whether a defendant is entitled to an instruction on a lesser-included offense. *See Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011); *Ex Parte Watson*, 306 S.W.3d 259, 262–63 (Tex. Crim. App. 2009); *see also Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). The first prong of the test requires the court to use the "cognate pleadings" approach to determine if an offense is a lesser-included offense of another offense. *See Watson*, 306 S.W.3d at 271. The first prong is met if the indictment for the greater-inclusive offense

either: "(1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Id.* at 273. This is a question of law, and it does not depend on the evidence to be produced at trial. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535.

The second prong asks whether there is evidence that supports submission of the lesser-included offense. *Hall*, 225 S.W.3d at 536. "A defendant is entitled to a requested instruction on a lesser-included offense where . . . there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "In other words, the evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Id.* (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge of a lesser-included offense, but it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Id.* (quoting *Bignall*, 887 S.W.2d at 23); *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) (citing *Bignall*, 887 S.W.2d at 24). Rather, "there must be some

8

evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner*, 956 S.W.2d at 543 (citing *Bignall*, 887 S.W.2d at 24).

When reviewing a trial court's decision to deny a requested instruction for a lesser-included offense, we consider the charged offense, the statutory elements of the lesser offense, and the evidence actually presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005) (citing *Jacob v. State*, 892 S.W.2d 905, 907–08 (Tex. Crim. App. 1995). "The credibility of the evidence, and whether it conflicts with other evidence, must not be considered in deciding whether the charge on the lesser-included offense should be given." *Dobbins v. State*, 228 S.W.3d 761, 768 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) (citing *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992)). If we find error and the appellant properly objected to the jury charge, we employ the "some harm" analysis. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

## B. Indecent Exposure

In his first point of error, Jimenez argues that the trial court abused its discretion by refusing to instruct the jury on the lesser included offense of indecent exposure. Specifically, Jimenez contends the evidence that he was only

"scratching" constitutes more than a scintilla of evidence sufficient to permit a jury to rationally find him guilty of only indecent exposure.

A person commits the offense of indecent exposure if he:

(1) exposes his anus or any part of his genitals

(2) with intent to arouse or gratify the sexual desire of any person, and

(3) is reckless about whether another is present who will be offended or alarmed by his act.

TEX. PENAL CODE ANN. § 21.08(a) (West 2011).

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the mouth of another person, who is 65 years of age or older, by the sexual organ of the actor, without that person's consent. *Id.* § 22.021(a)(1)(A)(ii), (a)(2)(C) (West Supp. 2013); *id.* § 22.04(c) (West Supp. 2013).

Citing *Hendrix v. State*, 150 S.W.3d 839, 850–51 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd), Jimenez contends that indecent exposure is a lesser-included offense of aggravated sexual assault. *Hendrix* recognized that indecency with a child may be a lesser included offense of aggravated sexual assault and noted that the question must be decided on a case by case basis. *Id.*

We need not decide whether indecent exposure is a lesser-included offense of aggravated sexual assault because Jimenez cannot satisfy the second prong of the test. The only evidence Jimenez cites in support of his claim that he could be

10

found guilty of only indecent exposure is his statement that he was "scratching" when Ekome walked into the complainant's room. This evidence does not make conviction on indecent exposure a rational alternative because Jimenez's claim that he was scratching himself denies that he exposed his penis with the "intent to arouse or gratify [his] sexual desire," which are elements of indecent exposure. *See* TEX. PENAL CODE ANN. § 21.08(a); *Sweed*, 351 S.W.3d at 68. Jimenez failed to adduce facts from which the elements of indecent exposure could be deduced. *See Hall*, 225 S.W.3d at 536. Therefore, we conclude that Jimenez was not entitled to jury instructions on indecent exposure.

We overrule Jimenez's first point of error.

## C. Attempted Aggravated Sexual Assault

In his second point of error, Jimenez contends that he was entitled to a jury instruction on the lesser-included offense of attempted aggravated sexual because his medical records demonstrate he had been unable to achieve and maintain an erection for eight years and, therefore, could not have penetrated the complainant. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(ii), (a)(2)(C); *id.* § 22.04(c) (A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the mouth of another person, who is 65 years of age or older, by the sexual organ of the actor, without that person's consent).

11

The Thirteenth Court of Appeals has previously considered, and rejected, a similar argument. *See Wilson v. State*, 905 S.W.2d 46, 48 (Tex. App.—Corpus Christi 1995, no pet.). The *Wilson* court explained:

> appellant could have been convicted if the jury found beyond a reasonable doubt that appellant penetrated complainant with any part of his penis. Simply because appellant may not have been able to have an erection, that possibility does not indicate that appellant did not penetrate complainant with his penis. If appellant placed his non-erect penis inside complainant, penetration still occurred.

*Id.*

We agree that Jimenez's ability to achieve an erection is irrelevant. Though penetration is an element of aggravated sexual assault, erection is not. *See id.*; *Thornton v. State*, 734 S.W.2d 112, 113 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (penetration element of sexual assault may be accomplished with any part of accused's body). Thus, we reject Jimenez's argument that some evidence would permit a rational jury to find him guilty of only attempted aggravated sexual assault. *See Wilson*, 905 S.W.2d at 48 (holding appellant not entitled to instruction on attempted aggravated sexual assault, despite his testimony that he could not have achieved erection, because erection is not required for penetration).

We overrule Jimenez's second point of error.

## Motion to Quash

In his third point of error, Jimenez contends that the trial court erred by denying his motion to quash the indictment. Jimenez contends the indictment

should have been quashed because it relieved the State of its burden to prove the assault was not consensual by incorporating Penal Code section 22.011(b)(11)'s definition of "without consent," which Jimenez contends is unconstitutional.

## A. Standard of Review

A pretrial motion to quash an indictment may be used only for a facial challenge to the constitutionality of a statute. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908–10 (Tex. Crim. App. 2011). To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). An "analysis of a statute's constitutionality must begin with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it." *Id.* (citing *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002)); TEX. GOV'T CODE ANN. § 311.021(1) (West 2013) ("In enacting a statute, it is presumed that compliance with the constitutions of this state and the United States is intended"). The individual challenging the statute has the burden to establish its unconstitutionality. *Id.* (citing *Lykos*, 330 S.W.3d at 911). We review the denial of a motion to quash an indictment de novo. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007).

13

**B. Applicable Law**

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the mouth of another person, who is 65 years of age or older, by the sexual organ of the actor, without that person's consent. TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(ii), (a)(2)(C); *id.* § 22.04(c). A sexual assault is without consent if "the actor is an employee of a facility where the other person is a resident, unless the employee and resident are formally or informally married." *Id.* § 22.011(b)(11); *id.* § 22.021(c). An employee of a facility, as used in this section, "means a person who is an employee of a facility defined by Section 250.001, Health and Safety Code, or any other person who provides service for a facility for compensation, including a contract laborer." *See* TEX. PENAL CODE ANN. § 22.011(c)(5); TEX. HEALTH & SAFETY CODE ANN. § 250.001(3) (West Supp. 2013) (including nursing home, custodial care home, and assisted living facility as definitions of "facility").

**C. Analysis**

Here, the indictment alleged that Jimenez "unlawfully, intentionally and knowingly cause[d] the penetration of the mouth of [complainant], a person at least sixty-five years of age with the sexual organ of [Jimenez], without [complainant's] consent." The indictment set out three ways in in which the jury could find the assault occurred "without consent:"

14

(1) the Defendant was an employee of a NURSING HOME, namely Seven Acres, where the Complainant was a resident, and the Complainant and Defendant were not married to each other;

(2) the Defendant knew that as a result of mental disease and defect that the Complainant was, at the time of the sexual assault, incapable of appraising the nature of the act and of resisting the act; and

(3) the Complainant had not consented and the Defendant knew the Complainant was unaware that the sexual assault was occurring.

The first, which tracks the language of section 22.011(b)(11), is the one Jimenez challenges as an unconstitutional presumption.

Jimenez contends that this "conclusive statutory presumption" violates his due process rights because it relieves the State of its burden to prove beyond a reasonable doubt that the assault was without consent. According to Jimenez, section 22.011(b)(11) unconstitutionally requires a jury to find lack of consent based solely on the fact that the complainant resided in a nursing home and was not married to Jimenez.

Courts have upheld strict liability statutes designed to protect a certain class of people as long as the statute serves a legitimate government interest. *See Scott v. State*, 36 S.W.3d 240, 242 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (statute satisfies due process if it rationally furthers legitimate governmental interest). For example, the court in *Scott* held that the statutory rape provision of section 22.011 of the Texas Penal Code was constitutional and did not violate the appellant's due process rights. *Id.* The appellant argued that the statute was

unconstitutional because it permits conviction even in the absence of evidence that the defendant knew the victim was a minor. *Id.* at 241–42. The *Scott* court held the statute does not violate due process because the Texas "legislature has a legitimate interest in protecting the health and safety of our children." *Id.* at 242; *see also Byrne v. State*, 358 S.W.3d 745, 752 (Tex. App.—San Antonio 2011, no pet.) ("As recognized by numerous state and federal courts, protection of minors from the improper sexual advances of adults is clearly a valid concern of our society and the government may impose strict liability statutes to encourage that practice.").

Section 22.011(b)(11) is similar insofar as it was enacted to protect the class of adults who reside in facilities, such as the elderly and the mentally ill, from abuse by employees of the facilities in which they reside. Because this is a legitimate government interest, we hold that Jimenez failed to rebut the presumption of the constitutionality of section 22.011(b)(11). *See Lykos*, 330 S.W.3d at 908–09 (to prevail on facial challenge, appellant must show statute always operates unconstitutionally, in all possible circumstances); *Rodriguez*, 93 S.W.3d at 69 (analysis of statute's constitutionality must begin with presumption that statute is valid and legislature did not act arbitrarily or unreasonably in enacting it); *State v. Rosseau*, 398 S.W.3d 769, 779 (Tex. App.—San Antonio 2011) (concluding facial challenge in motion to quash "failed to rebut the

presumption of constitutionality by proving the statute operates unconstitutionally in all its applications, and can never be constitutionally applied to any defendant charged under section 22.011 under any set of facts and circumstances"), *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013); *Byrne*, 358 S.W.3d at 752 (holding section 22.011(a)(2)(A) did not violate appellant's state or federal constitutional rights). Accordingly, we conclude that the trial court did not err by denying Jimenez's motion to quash.

We overrule Jimenez's third point of error.

## Jury Charge

In his fourth and fifth points of error, Jimenez argues that the trial court erred by (1) submitting an unconstitutional mandatory presumption regarding lack of consent and (2) failing to instruct the jury on its use of presumptions, as required by section 2.05 of the Texas Penal Code.

### A. Standard of Review

In analyzing a jury-charge issue, our first duty is to decide if error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc). Only if we find error, do we then consider whether an objection to the charge was made and analyze for harm. *Id.* If there was error and the appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean there is "some harm." *Almanza v.*

17

*State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) ("an error which has been properly preserved by objection will call for reversal as long as the error is not harmless"). We "examine the relevant portions of the entire record to determine whether appellant suffered any actual harm as a result of the error." *Airline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986) (en banc). We must reverse if we find "some actual, rather than merely theoretical, harm from the error." *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999). It is more likely to find "some harm" when the error "go[es] to the central issue in the case." *See Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008).

## B. Applicable Law

"Presumptions and inferences are evidentiary devices and in criminal law parlance they are said to be either mandatory or permissive." *Willis v. State*, 790 S.W.2d 307, 309 (Tex. Crim. App. 1990) (en banc). There are two types of mandatory presumptions: one requiring the fact finder to find an elemental fact upon proof of particular predicate facts and not allowing the trier of fact to find otherwise—a "conclusive presumption"—and one requiring the accused to disprove the elemental fact once the predicate fact has been established—a "rebuttable presumption." *Id.*

By contrast, "[a] permissive presumption permits, but does not require, the fact finder to find a presumed fact upon proof of the predicate fact." *Garrett v.*

18

*State*, 159 S.W.3d 717, 720 (Tex. App.—Fort Worth 2005), *aff'd*, 220 S.W.3d 926 (Tex. Crim. App. 2007).  A permissive presumption is not unconstitutional because it "allows, but does not require, the trier of fact to infer the elemental fact or ultimate fact from the predicate evidentiary fact or facts." *Tottenham v. State*, 285 S.W.3d 19, 31 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (quoting *Garrett*, 220 S.W.3d at 931 n.5).

Unless the trial court includes an instruction pursuant to section 2.05 of the Texas Penal Code in the jury charge, it is error to submit mandatory presumptions. *See id.*  Section 2.05(a)(2) provides:

> (2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:
>
> (A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;
>
> (B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;
>
> (C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and
>
> (D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

TEX. PENAL CODE ANN. § 2.05(a)(2) (West 2011).  As long as section 2.05 is incorporated into a jury charge that contains a presumption, the presumption will

be deemed a permissive one. *Tottenham*, 285 S.W.3d at 31. Thus, a section 2.05 instruction converts a mandatory presumption into a permissive presumption. *Id.*

Without a section 2.05 instruction, general language instructing the jury that it must find the defendant guilty beyond a reasonable doubt to convict and that the prosecution has the duty of proving each element beyond a reasonable doubt does not remedy a mandatory presumption. *See Garrett*, 159 S.W.3d at 721 (concluding charge omitted section 2.05 instruction where charge "instruct[ed] the jury that the prosecution ha[d] the duty of proving each and every element of the offense charged beyond a reasonable doubt," "failure to do so require[d] acquittal," and that the jury must find the knowledge element to convict); *Neely v. State*, 193 S.W.3d 685, 687 (Tex. App.—Waco 2006, no pet.) (holding general instructions regarding the presumption of innocence and burden of proof did not remedy omission of section 2.05 instruction). However, the State's closing argument may convert a mandatory presumption into a permissive presumption if it "inform[s] the jury that the presumption could, in some circumstances, not apply." *Tottenham*, 285 S.W.3d at 31.

## C. Analysis

### 1. The trial court erred by failing to provide a section 2.05 instruction.

Jimenez contends that section 22.011(b)(11) is a mandatory presumption because it "reliev[es] the State of the burden of proving every element of the

offense, including lack of consent, beyond a reasonable doubt." The State contends that section 22.011(b)(11) is not a mandatory presumption because it "did not relieve the State's burden of proof."

Section 22.011(b)(11) states that an assault is "without consent" if "the actor is an employee of a facility where the other person is a resident, unless the employee and resident are formally or informally married." TEX. PENAL CODE ANN. § 22.011(b)(11).

> Here, the charge stated that
>
> if you find from the evidence beyond a reasonable doubt that on or about the 5th day of January, 2010, in Harris County, Texas, the defendant, Tomas Jimenez, did then and there unlawfully, intentionally or knowingly cause the penetration of the mouth of [complainant], a person at least sixty-five years of age with the sexual organ of the defendant, without [complainant's] consent, namely the defendant was an employee of a nursing home, namely Seven Acres, where [complainant] was a resident, and [complainant] and defendant were not married to each other . . . then you will find the defendant guilty of aggravated sexual assault, as charged in the indictment.

In the same paragraph, the charge instructed that the jury would have to "find from the evidence beyond a reasonable doubt" that Jimenez was an employee of a facility where the complainant was a resident and Jimenez and the complainant were not married. *See id.* Elsewhere the charge instructed the jury that "the prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant."

21

Although the charge did not use the word "presumption" or "presume," the charge required the jury to find the assault was "without consent" if it found two predicate facts: (1) that Jimenez was an employee of a facility where the complainant was a resident and (2) Jimenez and the complainant were not married. The trial court thus submitted a mandatory presumption and erred in failing to also submit a section 2.05 instruction along with it. *See Neely*, 193 S.W.3d at 687; *Garrett*, 159 S.W.3d at 720–21.

## 2. Omission of the section 2.05 instruction was harmless.

When inquiring whether a mandatory presumption caused harm where the error was preserved, "the relevant inquiry is 'whether the evidence was so dispositive of [the element at issue] that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption.'" *Alexander v. State*, 757 S.W.2d 95, 100 (Tex. App.—Dallas 1988, pet. ref'd) (quoting *Rose v. Clark*, 478 U.S. 570, 583, 106 S.Ct. 3101, 3109 (1986)).

We note, first, that whether the assault was "without consent" was not a central issue in the case. Jimenez's defensive theory at trial was not that the assault was consensual but, rather, that the assault did not occur. Jimenez's counsel argued for acquittal on the basis that the State had not offered physical evidence to corroborate Ekome's testimony, Ekome's testimony was unreliable,

22

and Jimenez did not exhibit consciousness of guilt. Thus, the central issue was whether Jimenez actually penetrated the complainant's mouth with his penis.

Second, although the trial court erred in giving section 21.011(b)(11)'s definition of "without consent" without an accompanying section 2.05 instruction, the charge included two other definitions of "without consent":

(1) the Defendant knew that as a result of mental disease and defect that the Complainant was, at the time of the sexual assault, incapable of appraising the nature of the act and of resisting the act;

(2) the Complainant had not consented and the Defendant knew the Complainant was unaware that the sexual assault was occurring.

We are persuaded beyond a reasonable doubt that the jury would have found it unnecessary to rely on the section 21.011(b)(11) presumption in light of the strong evidence supporting a finding of lack of consent under the first of these two alternative definitions. *See Rose*, 478 U.S. at 583, 106 S.Ct. at 3109; *Alexander*, 757 S.W.2d at 100.

Seven Acres' medical director testified that "[w]hen [the complainant] came into Seven Acres she had [a] level of dementia which was moderate at that time. She could not handle her own affairs at that time. She did not have the cognitive or the capacity really to make any decisions." The medical director also testified that at the time of the assault, the complainant was incapable of appraising the nature of acts "because by then her dementia had progressed to more of a severe

23

state." There was also evidence that Jimenez knew the complainant had severe Alzheimer's dementia. Jimenez worked at the facility for approximately three years before the assault. The medical director testified that the complainant resided on the secured Alzheimer's unit and Jimenez's supervisor testified that because Jimenez was assigned to that floor, he had received special training about Alzheimer's patients. The record also reflects Jimenez's written and initialed acknowledgment that he reviewed and understood Seven Acres' policies, including residents' rights.

The State argued each definition of "without consent" to the jury in closing. The State argued it proved the mental disease definition

> because her treating physician [told the jury that the complainant] had cognitive impairment, that she stayed on the dementia unit, a secured floor, because they had to protect the residents. How do we know that the defendant knew she had a mental disease or defect? Because he took training. We heard about the training and the orientation that he had to go through [and] the documents that he signed as an employee. We learned that he worked exclusively on the second floor. He only worked with the dementia and Alzheimer's patients. He had to sign an agreement as to what that meant. [The complainant's treating physician] told us that [the complainant] was incapable of appraising the nature of the act. That's enough.

Having examined the record as a whole, we conclude the trial court's error in failing to submit the 2.05 instruction does not warrant reversal. *See Marioneaux v. State*, No. 03-99-00515-CR, 2000 WL 1028101, at *3 (Tex. App.—Austin July 27, 2000, pet. ref'd) (not designated for publication) (overruling appellant's section

24

2.05 challenge on the basis that "presumption instruction did not contribute to the verdict" where conflicting evidence did not concern presumption and jury's decision on conflicting evidence was independent of presumption); *cf. Brewer v. State*, No. 08-00-00424-CR, 2002 WL 266816, at \*5–6 (Tex. App.—El Paso Feb. 26, 2002, pet. ref'd) (not designated for publication) (holding trial court's omission of section 2.05 instruction caused some harm where trial court submitted presumption regarding knowledge that victim was a peace officer and appellant's defense was that he did not perceive he was shooting at police officers).

We overrule Jimenez's fourth and fifth points of error.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish. TEX. R. APP. P. 47.2(b).

25