# NO. 12-13-00241-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES SCOTT FRELS,* *APPELLANT* | § | *APPEAL FROM THE 258TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *TRINITY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

James Scott Frels appeals his convictions and sentences for aggravated sexual assault of a child and his sentence for indecency with a child. He raises six issues on appeal. We affirm.

## BACKGROUND

Appellant met the victim's mother on an online dating site. After a two and a half month period of social interaction, Appellant took the victim and her mother to a bar. While at the bar, Appellant paid for several alcoholic beverages that all three of them drank. Appellant's adult son, who resided at Appellant's home at the time, later arrived at the bar. He drank only one beer while there. The group decided to leave, and Appellant drove the victim and her mother to his home. Appellant's son returned to the home in his own vehicle. The exact events that occurred next were disputed, but it is undisputed that Appellant committed sexual acts with the thirteen year old victim in his bedroom. The next day, Appellant's son, a witness to the events, reported his father's conduct to law enforcement. Later that day, Appellant voluntarily provided two written statements within a three hour period. In the first statement, Appellant admitted no wrongdoing. In the second, he admitted engaging in sexual acts with the victim. The officers subsequently arrested Appellant.

A grand jury charged Appellant in a four count indictment for various sexual acts with the victim. Specifically, Appellant was indicted for indecency with a child through sexual contact by touching the child's genitals, a second degree felony as alleged (count two). The remaining three counts alleged that Appellant committed the first degree felony offense of aggravated sexual assault of a child under the age of fourteen by penetrating the child's sexual organ with his sexual organ (count one), causing the sexual organ of the child to contact his mouth (count three), and causing the sexual organ of the child to contact Appellant's sexual organ (count four).

Just as Appellant's jury trial began, he pleaded guilty to the indecency with a child allegation in count two. The trial proceeded on the three aggravated sexual assault offenses. The jury found Appellant guilty of counts one and four, and not guilty of count three. After a punishment hearing, the jury sentenced Appellant to twenty years of imprisonment and a $10,000.00 fine on count two, and seventy-five years of imprisonment with no fine on counts one and four respectively. The trial court ordered that all sentences be served concurrently. Appellant filed a motion for new trial alleging that the victim, in a posttrial interview, stated for the first time that Appellant and the victim had an additional sexual encounter prior to the date alleged in the indictment. After a hearing, the trial court denied the motion. This appeal followed.

## INSUFFICIENT EVIDENCE OF PENETRATION

In his fourth issue, Appellant argues that the evidence is insufficient to support a finding that he penetrated the victim's sexual organ as alleged in count one of the indictment.

## Standard of Review

In reviewing the sufficiency of the evidence, the appellate court must determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Considering the evidence "in the light most favorable to the verdict" under this standard requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899; *see* ***Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789. This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *See* ***Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789. "[A] court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." ***Id.***, 443 U.S. at 326, 99 S. Ct. at 2793. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can alone be sufficient to establish guilt. ***Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**Applicable Law**

To satisfy the elements of aggravated sexual assault of a child as alleged in count one of the indictment, the State was required to prove that Appellant intentionally or knowingly penetrated the sexual organ of the victim, a child under fourteen at the time, with his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2014).

Within the context of sexual assault, "penetration" of the female sexual organ occurs when there is "tactile contact beneath the fold of complainant's external genitalia." ***Cornet v. State***, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012). The act of "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact" and constitutes penetration for purposes of the sexual assault statute. ***Id.*** Contact regarded as more intrusive than contact with the victim's outer vaginal lips amounts to penetration of the female sexual organ. ***Id.***

The state may prove penetration by circumstantial evidence, and the victim need not testify as to penetration. *See* ***Villalon v. State***, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990); ***Murphy v. State***, 4 S.W.3d 926, 929 (Tex. App.—Waco 1999, pet. ref'd). Evidence of the slightest penetration is sufficient to uphold a conviction, so long as it is shown beyond a reasonable doubt. ***Luna v. State***, 515 S.W.2d 271, 273 (Tex. Crim. App. 1974).

**Discussion**

Appellant argues that the evidence is insufficient to support the jury's finding that he penetrated the victim's sexual organ with his sexual organ. The evidence, viewed in the light most favorable to the verdict, shows that a few weeks before the incident, the victim's mother mentioned to the victim that she should have sex with someone experienced rather than someone who would hurt her. The mother suggested that Appellant should be that person. At the bar on the night of the offenses, Appellant and the victim's mother ordered approximately sixteen beers, six "Jell-O shots," and five "Smirnoff" malt beverages on Appellant's credit card. The victim, a thirteen year old female, consumed all of the malt beverages. The victim testified that while at the bar, Appellant showed her his cell phone, which contained an unsent text message stating, "If you stay the night, I want you."

The victim testified further that her mother briefly passed out after they returned to Appellant's home, and that Appellant grabbed the victim by the arm and took her to his bedroom where they began engaging in sexual activities. Appellant's son, who was present at the house at the time, testified that Appellant's dog opened the door to the bedroom. Appellant's son observed that a light was on, and he saw his father, nude, on top of the victim, who was also nude. He stated that he could not see actual penetration, but that he heard the victim ask Appellant to "take it out. It hurts." He testified that Appellant was in between the victim's legs and her legs were around him at the time.

The victim testified that Appellant was not just touching her with his "thingy," but was "pushing it" while on top of her, and that he was trying to "push his thing into [her] private part." When asked why he stopped, she replied, "[H]e said it wouldn't go in." However, she testified that he tried "to push his thing in" for a couple of minutes.

The nurse conducting the Sexual Assault Nurse Examination (SANE) testified at trial that she examined the victim the day after the offenses took place. She testified that she observed redness and abrasions in the "left exterior facet" of the victim's sexual organ, along with two hymenal tears. In her written report, the SANE nurse noted that it was too painful for the victim to accommodate the speculum in her vagina as part of her exam, and that there was also redness and an abrasion to the perineum on her "posterior fourchette." She testified that the location of the tears in the hymen indicated they occurred while the patient was lying in a supine position. She also testified that in order for there to be injuries to the hymen, something would have to

4

penetrate the labia. She indicated that the injuries were recent because the tissues were red and tender to the touch, and there was no "rejuvenation tissue" present. She also opined that the injuries were consistent with penetration by a penis, and the penis must be erect in order to cause the injuries suffered.

Appellant points to his written statements and his testimony, along with similar testimony from the victim, that he was unable to achieve an erection and could not penetrate the victim's sexual organ. We note that "[t]hough penetration is an element of aggravated sexual assault, erection is not." *Jimenez v. State*, 419 S.W.3d 706, 714 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Turning to his written statements, Appellant denied any wrongdoing in his first statement. He admitted in his second statement, which was voluntarily given approximately three hours after his first statement, that he "tried to insert [his] penis into her vagina, but could not get it in." He said he "was too drunk to get a full erection," but that he was "semi-erect." He also admitted in the second statement that he "rubbed the lips of her vagina." In contrast, at trial, he testified that he was totally unable to obtain an erection, even though he admitted to placing a condom on his penis. Specifically, Appellant testified that he "got her in the missionary position and attempted to penetrate her and due to [his] intoxication [he] just was flaccid and could not do anything." This contradicts his second written statement in which he stated that he was "semi-erect." It is within the province of the jury as factfinder to resolve conflicts in the testimony and the evidence. *See Jackson*, 443 U.S. at 319, 326, 99 S. Ct. at 2789, 2793. Given the evidence it heard, the jury could have disbelieved Appellant's testimony at trial that he was unable to penetrate the victim.

Finally, Appellant also points to the lack of DNA testing on buccal swabs taken from the victim, but the victim and Appellant both testified that he used a condom. It does not appear from the record that the authorities recovered the condom used in the incident. The SANE nurse concluded that DNA testing was unlikely to be helpful because Appellant used a condom. The jury could have reasonably inferred that the fact that Appellant used a condom precluded the recovery of useful DNA evidence that could exonerate him.

Based on the evidence, the jury could have rationally concluded that Appellant's sexual organ had tactile contact beneath the fold of the victim's external genitalia, that the contact was more intrusive than contact with the victim's outer vaginal lips, and that he pushed aside and reached beneath a natural fold of skin into an area of the body not usually exposed to view.

Consequently, the jury could have rationally concluded that Appellant penetrated the victim's sexual organ. *See Cornet*, 359 S.W.3d at 226.

Appellant's fourth issue is overruled.

## ADMISSIBILITY OF SANE EXAM

In his third issue, Appellant contends that the SANE report was inadmissible hearsay, a portion of the report invaded the province of the jury, and the report also improperly bolstered the victim's testimony.

**Standard of Review**

A trial court's decision to admit evidence over an objection is reviewed for abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). If the decision of the trial court is within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it will be upheld on appeal. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

**Applicable Law**

To preserve a complaint for appellate review, the complaining party must have presented a specific and timely request, motion, or objection to the trial court and, further, must have obtained an adverse ruling. *See* TEX. R. APP. P. 33.1. The complaint on appeal must comport with the complaint made at trial. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

An "invading the province of the jury" objection is no longer recognized as a valid objection to opinion testimony. *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992); *Mock v. State*, 848 S.W.2d 215, 225 (Tex. App.—El Paso 1992, pet. ref'd); *see also* TEX. R. EVID. 704. "The doctrine which prohibited testimony that would invade the province of the jury 'is and has been long dead' as a proposition of law." *Mays v. State*, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978) (quoting *Boyde v. State*, 513 S.W.3d 588, 590 (Tex. Crim. App. 1974)).

**Discussion**

In the first part of this issue, Appellant argues that the trial court improperly admitted the SANE report under the hearsay exceptions for business records and for statements made for purposes of medical diagnosis or treatment. *See* TEX. R. EVID. 803(4), (6) (medical diagnosis or treatment and business records exceptions to hearsay rule). He contends that the exam was

conducted for investigatory purposes rather than for diagnosing or treating a medical condition of the victim. Appellant did not raise this objection at trial. However, he filed a pretrial written objection to the report on these grounds, but failed to secure a ruling on his objection. Consequently, Appellant waived this portion of his third issue, and we do not address it. *See* TEX. R. APP. P. 33.1(a)(2)(A).

In the second component of this issue, Appellant contends that the SANE nurse's opinion, as expressed in her written report stating, "'Was there penetration?' And it's checked off: 'Female sexual organ[,]'" invaded the province of the jury because it was an opinion on the ultimate issue to be decided by the jury. The fact that the nurse, in her report, states that there was penetration is not objectionable on this ground, because the rules of evidence permit opinion testimony on ultimate issues of fact. *See* TEX. R. EVID. 704; *Ortiz*, 834 S.W.2d at 348.

In the final component of his third issue, Appellant contends that "[w]hen a sexual abuse examination is at issue, and there is no physical evidence of abuse, the testimony of the sexual assault examiner can only be seen as an attempt to directly bolster the credibility of the complainant and a direct comment on the complainant's truthfulness." *See Salinas v. State*, 166 S.W.3d 368, 371 (Tex. App.—Fort Worth 2005, pet. ref'd). Consequently, his argument continues, the portion of the SANE nurse's report indicating that the victim's sexual organ was penetrated is an improper comment on the victim's truthfulness. We note that Appellant did not object to the report or the nurse's testimony on this ground. His only objection was that it "invaded the province of the jury." In other words, the argument made on appeal does not comport with the objection he made at trial, and therefore he has failed to preserve it. *See Lovill*, 319 S.W.3d at 691–92 (Tex. Crim. App. 2009).

But even if we were to review that portion of this issue, Appellant has not demonstrated reversible error. While we agree with the general statement of law relied upon by Appellant in *Salinas*, it is inapplicable here. *Salinas* is predicated on an absence of evidence of physical abuse. *Salinas*, 166 S.W.3d at 370-71. There, the nature of the alleged abuse left no physical evidence. *Id.* at 370. Nevertheless, the trial court allowed the examining physician to testify that the victim was sexually assaulted solely on the basis of the child's statements to the physician. *Id.* The court held that "[b]ecause there was no [physical evidence of sexual abuse], [the physician's] testimony can only be seen as an [improper] attempt to directly bolster the credibility of the complainant and a direct comment on the complainant's truthfulness." *Id.* at

371. In this case, we have already described ample evidence of the sexual assaults, including the physical evidence of penetration from the SANE nurse's testimony and report, along with Appellant's own admissions of his attempts to sexually assault the victim. For that reason, the holding in *Salinas* is inapplicable to the facts of the present case.

Appellant's third issue is overruled.

**IMPROPER CLOSING ARGUMENT**

In his second issue, Appellant argues that the prosecutor improperly injected facts not in evidence during the closing argument on punishment and that he went outside the scope of permissible argument.

## Standard of Review

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). To preserve error in cases of improper prosecutorial argument, the defendant must, until he receives an adverse ruling, (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993).

## Applicable Law

The law provides for, and presumes, a fair trial free from improper argument by the prosecuting attorney. *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000).

Counsel is generally given wide latitude in drawing inferences from evidence as long as they are reasonable, fair, legitimate, and offered in good faith. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). It is improper for the state to argue that the community expects a certain verdict or punishment. *See Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990). The state may, however, request the jury to represent or be the voice of the community when reaching its verdict. *See Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim.

8

App. 1984). The state may also properly remind the jury that its decision can reflect a desire for strong law enforcement. *See Goocher v. State*, 633 S.W.2d 860, 864–65 (Tex. Crim. App. 1982).

A plea for law enforcement is proper argument and may take many forms, including arguments that draw on the jury verdict's impact on the deterrence of crime in general and the community at large. *Borjan*, 787 S.W.2d at 55–56 (observing that state may argue that jury should deter specific crimes by its verdict); *Nelson v. State*, 881 S.W.2d 97, 102 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Moreover, matters of common knowledge may be incorporated into final argument without express support in the evidence. *Carter v. State*, 614 S.W.2d 821, 823 (Tex. Crim. App. [Panel Op.] 1981).

Even when an argument exceeds the permissible bounds of proper argument, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The remarks must have been a willful and calculated effort on the part of the state to deprive Appellant of a fair and impartial trial. *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). In determining whether improper jury argument warrants a mistrial, we balance three factors: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

**Discussion**

Appellant points to several statements by the prosecutor during the punishment phase that he alleges are improper argument warranting a new trial. First, he alleges the argument that Appellant and the victim's mother planned the sexual conduct is the injection of a new fact unsupported by the record. The evidence admitted at trial shows that this statement is both a summation of the evidence and a reasonable deduction from the evidence. As we have stated, the victim testified that a few weeks before the sexual assaults, her mother brought up the topic of sex and stated "better you do it with someone experienced than somebody that will hurt you." She testified that her mother told her Appellant should be that person.

On the night of the offenses, the victim's mother actively assisted in her daughter's intoxication. While the offenses occurred, Appellant's son asked the victim's mother why she let this happen, and in response, she tried to "calm [him] down." Moreover, he testified that the victim's mother was aware of the conduct, watched from the doorway as it occurred, and did nothing to stop it. One of the investigating officers testified that the victim's mother was arrested for endangering a child, and that he subsequently filed an additional charge against her for sexual performance of a child.

The victim testified at trial that her mother knew she was going into Appellant's room. She also stated that her mother entered Appellant's bedroom at or near the time the sexual acts happened or just as they concluded. Her mother got in the bed with her clothes off. Also, the victim testified that her mother asked her the morning after, without the victim's raising it, whether Appellant "put his thingy in [her]." The victim replied "yes, but no." She clarified that "yes, [he put his thingy inside,] but he said he didn't." Similarly, the SANE notes indicate that the victim said that her mother "came in and got in bed with [them as the sexual acts concluded]. [Appellant and the victim's mother] started moving around. So [the victim] got up and went to sleep on the couch."

Finally, in Appellant's first written statement, he said that Appellant's son told him the following day that the victim's mother watched through the door and asked his son to just "let it happen."[1] The jury could reasonably infer from all this evidence that Appellant and the victim's mother planned the encounter, which is a fair summation of the evidence and therefore a permissible basis for jury argument.

Next, Appellant argues that the prosecutor improperly injected facts not in evidence by referring to a cable television program filmed in Trinity County, entitled *Fat Cops*, which humorously documents the daily lives of the City of Trinity's residents and its police officers. The trial court sustained his objection, but Appellant did not request an instruction to disregard the comment or move for a mistrial. Consequently, he has waived this component of his second issue. *See Cockrell*, 933 S.W.2d at 89.

Even if we were to address this portion of his second issue, we would conclude that it was a proper plea for law enforcement. When reading the record as a whole, it is clear that the

---

[1] Although Appellant acknowledged that his son told Appellant that he saw them having sex, Appellant denied having sex with the victim.

10

prosecutor used this reference to the program to compare the comedic nature of it with what he believed to be lax enforcement of sex crimes laws in the Trinity County area. The prosecutor urged the jury, who likely was aware of the program, that it should refrain from allowing the proceedings to become an episode of the show, and that it should enforce the law and levy a severe punishment. As we have stated, a plea for law enforcement can take many forms. *See Borjan*, 787 S.W.2d at 55–56. We cannot conclude that the prosecutor's statements were improper argument.

Similarly, Appellant contends that the prosecutor acted improperly when he argued that he did not sleep well during the trial because he has worked hard and has "done everything [he] could do." He argues that this is a plea for empathy in that the prosecutor asked the jury to assess a strict punishment because the prosecutor worked hard on presenting the case to them. However, read in context, the prosecutor further explained that he would sleep well the night that the trial concluded, because he fully presented his case, it was now in the jury's hands, and it was the jury's responsibility to administer justice. The prosecutor continued that justice should be achieved "for this victim in this case and also let's punish this guy for what he did." In the context in which it was made, the prosecutor's statement is a proper plea for law enforcement.

Finally, even if the trial court erred in allowing the prosecutor to make the complained of arguments, the error would not result in a mistrial. The statements were brief, the trial court was not asked for curative instructions on any of the errors, Appellant never moved for a mistrial, and the evidence of guilt, which we have already described, is overwhelming.

Appellant's second issue is overruled.

### THE TRIAL COURT'S CHARGE ON PUNISHMENT

In his fifth issue, Appellant argues that the trial court erred in failing to include all statutory terms and conditions of community supervision applicable to sex offenders in its charge to the jury on punishment. *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 42.12 §§ 11, 13(B), (G), (H), 14 (West Supp. 2014). The trial court is not required to list these terms and conditions as part of its charge to the jury on punishment, and the trial court could properly refuse this request. *See Yarbrough v. State*, 779 S.W.2d 844, 845 (Tex. Crim. App. 1989) (per curiam); *Croft v. State*, 148 S.W.3d 533, 539-40 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Appellant's fifth issue is overruled.

In his first issue, Appellant contends that he is entitled to a new trial because newly discovered evidence showed that the victim "withheld relevant information prior to trial" that affected the presentation of the case.

## Standard of Review and Applicable Law

Motions for new trial based on grounds of newly discovered evidence are not favored by courts. *Drew v. State*, 743 S.W.2d 207, 225–26 (Tex. Crim. App. 1987). Texas Code of Criminal Procedure Article 40.001 provides "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006). In order for a defendant to be entitled to a new trial on the basis of newly discovered or newly available evidence, the following four-part test must be met: (1) the new evidence must have been unknown or unavailable to him at the time of trial; (2) his failure to discover or to obtain the evidence was not due to his lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014). The failure of the movant to establish any one of the requirements for a new trial based on newly discovered evidence supports the trial court's denial of the motion. *See Jones v. State*, 234 S.W.3d 151, 157 (Tex. App.—San Antonio 2007, no pet.) (citing *Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.—San Antonio 2002, pet. ref'd)).

## Discussion

Appellant argues that after the trial's conclusion, the victim gave another interview, and claimed that she and Appellant had sexual intercourse a week or two prior to the alleged incident in this case. Appellant asserts that had he known this, his strategy would have been different. Namely, he contends he would have used the information to show that the victim lied, that it was possible that the penetration occurred during the earlier event, and that he never penetrated the victim on the night of the offenses for which he was indicted. Alternatively, Appellant argues that he might have decided to plead guilty had he known of the interview.

It appears that the crux of Appellant's claim is that he would have used the interview to impeach the victim's credibility at a new trial. This is an improper basis upon which to grant a

motion for new trial for newly discovered evidence. *See Carsner*, 444 S.W.3d at 2–3 (identifying impeachment as improper basis for new trial due to newly discovered evidence).

With regard to his complaint that the interview would dispel any possibility that he penetrated the victim on the date alleged in the indictment, such a conclusion does not follow, because we have already described ample evidence that he penetrated the victim's sexual organ on the night alleged in the indictment. Moreover, one of the focuses of Appellant's defense was that he was a man of good character and that this was an isolated incident that occurred while he was intoxicated. Had the jury known that he committed other sexual offenses against the victim on a prior occasion, it would likely have assessed an even harsher sentence. Consequently, we fail to see how he was harmed by the omission of the evidence.

Finally, with regard to Appellant's argument that he would have pleaded guilty had he known of the interview, he cites no authority to support that a change in trial strategy based on newly discovered evidence is a proper ground for a new trial under these circumstances. Nor have we have found such authority.

Appellant's first issue is overruled.

### CRUEL AND UNUSUAL PUNISHMENT

In his sixth issue, Appellant argues that his concurrent sentences amount to cruel and unusual punishment in violation of the United States and Texas constitutions. However, Appellant made no timely objection to the trial court raising the issue of cruel and unusual punishment and has, therefore, failed to preserve any such error. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver with regard to rights under the Texas Constitution); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver with regard to rights under the United States Constitution); *see also* TEX. R. APP. P. 33.1; *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion[;] . . . it [is] incumbent upon the [c]ourt itself to take up error preservation as a threshold issue."). But even despite Appellant's failure to preserve error, we conclude that the sentences about which Appellant complains do not constitute cruel and unusual punishment.

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons*

*v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See **Harris v. State***, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); ***Jordan v. State***, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); ***Davis***, 905 S.W.2d at 664. In the case at hand, Appellant was convicted of two counts of aggravated sexual assault of a child, the punishment range for which is five to ninety-nine years or life for each offense. *See* TEX. PENAL CODE ANN. §§ 12.32, 22.021 (West 2011 & Supp. 2014). He was also convicted for indecency with a child by contact, the punishment range for which as alleged, is two to twenty years of imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.33, 21.11 (West 2011). Here, the sentences imposed by the trial court fall within the range set forth by the legislature. Therefore, the punishments are not prohibited as cruel, unusual, or excessive per se.

Nonetheless, Appellant urges the court to perform the three part test originally set forth in ***Solem v. Helm***, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. ***Solem***, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the ***Solem*** test has been modified by Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in ***Harmelin v. Michigan***, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g., **McGruder v. Puckett***, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also **Jackson v. State***, 989 S.W.2d 842, 845–46 (Tex. App.—Texarkana 1999, no pet.).

We first must determine whether Appellant's sentences are grossly disproportionate. In so doing, we are guided by the holding in ***Rummel v. Estell***, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). In ***Rummel***, the Supreme Court addressed the proportionality claim of an appellant who had received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See **id.***, 445 U.S. at 266, 100 S. Ct. at 1135. A life sentence was imposed because the appellant also had two prior felony convictions—one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. ***Id.***, 445 U.S. at 266,

100 S. Ct. at 1134–35.  After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment.  *Id.*, 445 U.S. at 285, 100 S. Ct. at 1145.

In the case at hand, the two counts of aggravated sexual assault of a child, along with the indecency with a child count, were far more serious than the combination of offenses committed by the appellant in ***Rummel***, while Appellant's seventy-five year sentences and twenty year sentence are, in effect, no more severe than the life sentence upheld by the Supreme Court in ***Rummel***.  Thus, it is reasonable to conclude that if the sentence in ***Rummel*** was not unconstitutionally disproportionate, then neither are the concurrent sentences assessed against Appellant in the case at hand.  Therefore, since the threshold test has not been satisfied, we need not apply the remaining elements of the ***Solem*** test.

Appellant's sixth issue is overruled.

## DISPOSITION

Having overruled Appellant's six issues, we ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered April 22, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 22, 2015**

**NO. 12-13-00241-CR**

**JAMES SCOTT FRELS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 258th District Court

of Trinity County, Texas (Tr.Ct.No. 9953)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*