ACCEPTED
03-15-00398-CR
7932360
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/20/2015 3:29:14 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00398-CR

## IN THE COURT OF APPEALS
## THIRD DISTRICT
## AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/20/2015 3:29:14 PM
JEFFREY D. KYLE
Clerk

GARY LEE GRIFFIN, Appellant

*v.*

THE STATE OF TEXAS

ON APPEAL FROM THE 22ND DISTRICT COURT OF HAYS COUNTY
TRIAL COURT CAUSE NUMBER CR-14-0432

BRIEF FOR APPELLANT

Richard E. Wetzel
State Bar No. 21236300
1411 West Ave., Suite 100
Austin, Texas 78701
(512) 469-7943 – Telephone
(512) 474-5594 - Fax
wetzel_law@1411west.com

Attorney for Appellant
Gary Lee Griffin

ORAL ARGUMENT REQUESTED

## Identity of Parties and Counsel

Appellant:                                      Gary Lee Griffin

Trial Counsel for Appellant:                    Daniel Garcia
                                                Attorney at Law
                                                1800 Guadalupe St.
                                                Austin, TX
                                                78701

Appellate Counsel for Appellant:                Richard Wetzel
                                                Attorney at Law
                                                1411 West Ave., Ste. 100
                                                Austin, TX
                                                78701

Appellee:                                       State of Texas

Trial and Appellate Counsel for Appellee:       Jennifer Stalbaum
                                                Assistant District Attorney
                                                712 S. Stagecoach Tr.
                                                Ste. 2057
                                                San Marcos, TX
                                                78666

Trial Judge:                                    Hon. Bruce R. Boyer
                                                22nd District Court
                                                Hays County, Texas

**Table of Contents**

**Page**

List of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . .. . . . . . . . . .. . . . . . . .iv

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Point of Error One . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

The evidence is insufficient to support the conviction because a volunteer fireman is not a "public servant" but rather "emergency services personnel" as those terms are statutorily defined.

Point of Error Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

Griffin was denied the effective assistance of counsel at trial.

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

# Index of Authorities

**Page**

**Constitutions**

TEX. CONST. art. III, Sec. 48-e . . . . . . . . . . . . . . . . . . .14

U.S. CONST. amend. VI . . . . . . . . . . . . . . . . . . .23

U.S. CONST. amend. XIV . . . . . . . . . . . . . . . . . . .23

**Cases**

*Bell v. Cone*, 535 U.S. 685
(2000) . . . . . . . . . . . . . . . . . . .25

*Boyington v. State*, 738 S.W.2d 704
(Tex. App.—Houston [1st Dist.] 1985, no pet.) . . . . . . . . . . . . . . . . . . .30

*Cada v. State*, 334 S.W.3d 766
(Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . .16

*Cameron v. Terrell & Garrett*, 618 S.W.2d 535
(Tex. 1981) . . . . . . . . . . . . . . . . . . .19

*Cannon v. State*, 668 S.W.2d 401
(Tex. Crim. App. 1984) . . . . . . . . . . . . . . . . . . .23

*Collier v. Turpin*, 155 F.3d 1277
(11th Cir. 1998) . . . . . . . . . . . . . . . . . . .25

*Cooper v. State*, 769 S.W.2d 301
(Tex. App. – Houston [1st Dist.]. 1989, pet. ref'd) . . . . . . . . . . . . . . . . . . .24

*Craig v. State*, 825 S.W.2d 128
(Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . .23

*Delta Elec. Const. Co. v. City of San Antonio*, 437 S.W.2d 602
(Tex. Civ. App.-- San Antonio 1969, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . .18

*Drinkert*, *Ex parte,* 821 S.W.2d 953
(Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . . . .38

*E. Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723
(Tex. App.-- Houston [1st Dist.] 2009, no pet.) . . . . . . . . . . . . . . . . . .21

*Felton*, *Ex parte,* 815 S.W.2d 733
(Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . . .24

*Garrett v. State,* 159 S.W.3d 717
(Tex. App. – Fort Worth 2005) *affirmed*
220 S.W.3d 926 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . .38

*Gifford v. State*, 980 S.W.2d 791
(Tex. App. – Houston [14th Dist.] 1998, pet. ref'd) . . . . . . . . . . . . . . . . . .27

*Gokey v. State*, 314 S.W.3d 63
(Tex. App.—San Antonio 2010, pet. ref'd, untimely filed). . . . . . . . . . . . . . . . . .36

*Hardwick v. Crosby*, 320 F.3d 1127
(11th Cir. 2003) . . . . . . . . . . . . . . . . . . .26

*Hardy v. State*, 281 S.W.3d 414
(Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . .18

*Haynes v. Cain*, 272 F.3d 757
(5th Cir. 2001) . . . . . . . . . . . . . . . . . . .39

*Henry v. United States,* 361 U.S. 98
(1959) . . . . . . . . . . . . . . . . . . .29

*Jackson v. Virginia*, 443 U.S. 307
(1979) . . . . . . . . . . . . . . . . . .16

*Jimenez v. State*, 419 S.W.3d 706
(Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) . . . . . . . . . . . . . . . . . .37

*Kyles v. Whitley*, 514 U.S. 419
(1995) . . . . . . . . . . . . . . . . . .39

v

*Lilly*, *Ex parte,* 656 S.W.2d 490
(Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . .26

*Liverman v. State*, ___ S.W.3d ___, 2015 WL 5579418,
(Tex. Crim. App. 2015) . . . . . . . . . . . . . . . . . .17

*Loyd v. Whitley*, 977 F.2d 149
(5th Cir. 1992) . . . . . . . . . . . . . . . . . .25

*Martin v. Rose*, 744 F.2d 1245
(6th Cir. 1984) . . . . . . . . . . . . . . . . . .26

*Miniel v. State*, 831 S.W.2d 310
(Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . .23

*Mitchell v. State*, 762 S.W.2d 916
(Tex. App.—San Antonio 1988, pet. ref'd) . . . . . . . . . . . . . . . . . .30

*Moore v. Johnson*, 194 F.3d 586
(5th Cir. 1999) . . . . . . . . . . . . . . . . . .26

*Nero v. Blackburn*, 597 F.2d 991
(5th Cir. 1979) . . . . . . . . . . . . . . . . . .24

*Norrell v. Gardendale Volunteer Fire Dep't*, 115 S.W.3d 114
(Tex. App.--San Antonio 2003 no pet.) . . . . . . . . . . . . . . . . . .19

*Patrasso v. Nelson*, 121 F.3d 297
(7th Cir. 1997) . . . . . . . . . . . . . . . . . .39

*Perkins v. State*, 812 S.W.2d 326
(Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . .30

*Profitt v. Waldron*, 831 F.2d 1245
(5th Cir. 1987) . . . . . . . . . . . . . . . . . .26

*Robertson v. State*, 187 S.W.3d 475
(Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . .34

*Schott Glas v. Adame*, 178 S.W.3d 307
(Tex. App.--Houston [14th Dist.] 2005, pet. denied) . . . . . . . . . . . . . . . . . . .20

*Self v. State,* 709 S.W.2d 662
(Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . .30

*Smith v. Baldwin*, 611 S.W.2d 611
(Tex. 1980) . . . . . . . . . . . . . . . . . . .19

*State v. Vasilas*, 187 S.W.3d 486
(Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . .17

*Stone v. State*, 17 S.W.3d 348
(Tex. App.-Corpus Christi 2000, pet. ref'd) . . . . . . . . . . . . . . . . . .27

*Strickland v. Washington*, 466 U.S. 668
(1984) . . . . . . . . . . . . . . . *passim*

*Stull v. State*, 772 S.W.2d 449
(Tex. Crim. App. 1989) . . . . . . . . . . . . . . . . . .30

*Summitt v. Blackburn*, 795 F.2d 1237
(5th Cir. 1986) . . . . . . . . . . . . . . . . . .36

*Tottenham v. State,* 285 S.W.3d 19
(Tex. App. – Houston [1[st] Dist.] 2009, pet. ref'd) . . . . . . . . . . . . . . . . . .37

*United States v. Dominguez Benitez*, 542 U.S. 74
(2004) . . . . . . . . . . . . . . . . . .39

*Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538
(Tex. App.--Houston [14th Dist.] 2003, no pet) . . . . . . . . . . . . . . . . . .20

*Washington v. Hofbauer*, 228 F.3d 689
(6th Cir. 2000) . . . . . . . . . . . . . . . . . .26

*Welborn, Ex parte,* 785 S.W.2d 391
(Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . .27

*Westley v. Johnson*, 83 F.3d 714
(5th Cir. 1996) . . . . . . . . . . . . . . . . . .25

*Wiggins v. Smith*, 539 U.S. 510
(2003) . . . . . . . . . . . . . . . . . .24

*Wilkerson v. State*, 726 S.W.2d 542
(Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . .23

*Yeager v. City of McGregor*, 980 F.2d 337
(5th Cir. 1993) . . . . . . . . . . . . . . . . . .20

*Zepeda*, *Ex parte*, 819 S.W.2d 874
(Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . .23

**Statutes**

TEX. C.S. H.B. 495, 80th Leg., R.S. (2007) . . . . . . . . . . . . . . . . . .15

TEX. CIV. PRAC. & REM. CODE § 102.001 . . . . . . . . . . . . . . . . . .19

TEX. CRIM. PROC. CODE arts. 14.01 . . . . . . . . . . . . . . . . . .30

TEX. CRIM. PROC. CODE arts. 14.02 . . . . . . . . . . . . . . . . . .30

TEX. CRIM. PROC. CODE arts. 14.03 . . . . . . . . . . . . . . . . . .30

TEX. CRIM. PROC. CODE arts. 14.04 . . . . . . . . . . . . . . . . . .30

TEX. GOV'T CODE § 311.011(a) . . . . . . . . . . . . . . . . . .17

TEX. GOV'T CODE § 311.023 . . . . . . . . . . . . . . . . . .18

TEX. HEALTH & SAFETY CODE § 773.003 . . . . . . . . . . . . . . . . . .11

TEX. HEALTH & SAFETY CODE § 775.031(c) . . . . . . . . . . . . . . . . . .14

TEX. PEN. CODE § 1.05(a) . . . . . . . . . . . . . . . . . .18

TEX. PEN. CODE § 1.07(41) . . . . . . . . . . . . . . . . . .14

TEX. PEN. CODE § 1.07(a)(41)(A) . . . . . . . . . . . . . . . . . . .18

TEX. PEN. CODE § 1.07(a)(41)(F) . . . . . . . . . . . . . . . . . . .18

TEX. PEN. CODE § 1.07(a)(24) . . . . . . . . . . . . . . . . . . .18

TEX. PEN. CODE § 2.05(a)(2)(A)-(D) . . . . . . . . . . . . . . . . . . .13

TEX. PEN. CODE § 22.01(a)(1) . . . . . . . . . . . . . . *passim*

TEX. PEN. CODE § 22.01(b)(1) . . . . . . . . . . . . . . *passim*

TEX. PEN. CODE § 22.01(b)(5) . . . . . . . . . . . . . . *passim*

TEX. PEN. CODE § 22.01(d) . . . . . . . . . . . . . . . . . .36

TEX. PEN. CODE § 22.01(e)(1) . . . . . . . . . . . . . . *passim*

**Rules**

TEX. R. APP. P. 9.4 . . . . . . . . . . . . . . . . . . .42

TEX. R. EVID. 103(a)(2) . . . . . . . . . . . . . . . . . . .33

TEX. R. EVID. 803(2) . . . . . . . . . . . . . . . . . . .33

**Other**

HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, TEX. C.S.H.B. 495, 80th Leg., R.S. (2007) . . . . . . . . . . . . . . . . . . .15

## Statement of the Case

This is an appeal from a criminal proceeding. Gary Lee Griffin was indicted by a Hays County grand jury for the third degree felony offense of assault on a public servant. See TEX. PEN. CODE § 22.01(a)(1) and (b)(1) (CR 5). The indictment alleges in relevant part that on April 9, 2014, Griffin intentionally, knowingly, or recklessly caused bodily injury to Philip Arbogast by striking Arbogast on or about the neck, that Griffin knew Arbogast was a public servant, a fireman, and that Griffin knew Arbogast was lawfully discharging an official duty by collecting water to use to extinguish a fire.

A jury was selected and sworn (2 RR 212-213). Griffin entered a plea of not guilty to the charged offense (3 RR 17). Evidence was presented by both the State and Griffin. After both sides rested and closed, a charge was presented to the jury (4 RR 88). The jury found Griffin guilty as charged on May 20, 2015 (4 RR 132). The jury was discharged and the trial court ordered a presentence investigation report (4 RR 133).

The matter was recalled for a punishment hearing before the court on June 25, 2015 (5 RR). Evidence was presented by Griffin and argument made by both counsel. At the conclusion of the proceeding, the trial court assessed punishment at two years, suspended the imposition of the sentence and placed Griffin on

1

community supervision for four years, and imposed a $2500 fine (5 RR 43). Terms and conditions of community supervision included 200 hours of community service, anger management counseling, apology letters to the Wimberley Volunteer Fire Department as well as Arbogast, and agreed upon restitution (CR 55, 5 RR 43).

A motion for new trial was timely filed (CR 70). A hearing was held on the motion for new trial (1 RR).[1] At the conclusion of the hearing, the trial court denied the motion for new trial (CR 110, 1 RR 40).

The trial court certified Griffin's right to appeal (CR 57). Notice of appeal was timely filed (CR 64).

---

[1] The record on appeal contains two volumes labeled volume one of the reporter's record. The first volume one is the master index of the reporter's record. The second volume one is the record from the hearing on the motion for new trial. When Griffin refers to "1 RR," he is referring to the reporter's record of the hearing held on the motion for new trial on September 3, 2015.

## Issues Present on Appeal

Point of Error One

The evidence is insufficient to support the conviction because a volunteer fireman is not a "public servant" but rather "emergency services personnel" as those terms are statutorily defined.

Point of Error Two

Griffin was denied the effective assistance of counsel at trial.

## Statement of Facts

Phil Arbogast, the complainant, is a volunteer with the Wimberley Volunteer Fire Department (3 RR 43). On the afternoon of April 9, 2014, he responded to a structure fire (3 RR 35). Arbogast was driving a tanker truck used to take water to the fire (3 RR 35).

When the truck ran out of water, Arbogast went to Lone Man Creek to fill his truck (3 RR 39). He parked on a low water bridge and began to draw water from the creek (3 RR 40). The bridge was located on a private road connected to a public highway (3 RR 60).

3

While Arbogast was drawing water from the creek, Griffin approached from a nearby home and said "this is fucking private land and fucking private water" (3 RR 40). Arbogast responded that the water belonged to the State of Texas and he needed the water it for a nearby structure fire (3 RR 41).

Arbogast testified he was struck on the throat by Griffin, lost his balance, and fell into Lone Man Creek (3 RR 42). The water was about 12 feet deep and Arbogast stood on a root ball after telling Griffin he could not swim (3 RR 42). Upon Arbogast asking Griffin for help to get out of the creek, Griffin smirked and walked away (3 RR 43). Arbogast eventually crawled out of the creek and used a radio and cellphone in his truck to report the incident (3 RR 44). When he fell into the creek, Arbogast lost a radio, pager, and lapel mic (3 RR 89). He initially believed he had lost a radio valued in excess of $2500.00 (3 RR 182).

Arbogast denied ever yelling at Griffin or being aggressive toward him on the bridge (3 RR 44). At the time of the incident, Arbogast was wearing a t-shirt with the Wimberley Fire and Rescue emblem on both the front and back of the shirt and blue jeans (3 RR 51). No particular uniform is required of volunteers and they simply show up for duty in "whatever" (3 RR 106). Arbogast never identified himself as a fireman to Griffin (3 RR 106).

4

Arbogast said it hurt when Griffin struck him (3 RR 56). He was not in extreme pain, but was in discomfort on his neck and throat (3 RR 112). In his statement to the authorities, Arbogast never mentioned he was injured or suffered any pain as a result of Griffin allegedly striking him (3 RR 133).

A deputy sheriff responded to Arbogast's report of the incident (3 RR 109). Arbogast told him what had happened and identified Griffin as his assailant when deputies went to Griffin's home (3 RR 114).

Finally, Arbogast testified that the Wimberley Volunteer Fire Department is funded by an emergency services district (3 RR 181). He is both a member of and an agent of the Wimberley Volunteer Fire Department (3 RR 181).

Hays County Deputy Sheriff David Gamble responded to Arbogast's report of falling into the creek (3 RR 141). Upon arriving, he saw a tanker truck on a low water bridge and Arbogast standing nearby in wet clothing (3 RR 143). After speaking with Arbogast, Gamble went to Griffin's home and saw Griffin on the sidewalk (3 RR 147). When asked what happened at the creek, Griffin responded to Gamble "fuck you and get off my property" (3 RR 148).

Gamble believed he had probable cause to arrest Griffin based on Arbogast's statements to him and Arbogast's wet clothing (3 RR 159). Griffin was then restrained and placed in a patrol unit for the offense of assault on Arbogast, a

5

public servant (3 RR 148). Griffin was agitated and noncompliant when being led to the patrol vehicle (3 RR 149, 151). When asked by Gamble if he had any weapons, Griffin responded "I have my fucking dick in my pants, would you like for me to shove it up your ass?" (3 RR 150). Gamble threatened to use a Taser on Griffin if he did not enter the patrol vehicle (3 RR 151, 179). A dash cam video of Griffin's arrest and statements at the scene of the arrest was admitted into evidence without objection (3 RR 155, 6 RR SX 13).[2]

Griffin's fiancé was at the home she shares with Griffin at the time of the incident (3 RR 153). Gamble asked her if she had seen what happened at the bridge and she said she did not see anything because her view of the bridge was blocked from the home (3 RR 153, 172). Gamble noticed Griffin's knee was scraped in a manner consistent with Griffin's story that he scraped his knee when he bent down and tried to pull Arbogast from the creek (3 RR 177).

---

[2] A 23 minute videotape from the scene of the arrest was admitted into evidence without objection by defense counsel (3 RR 155, 6 RR SX 13). The videotape contains Gamble's initial encounter with Griffin upon his arrest, arguing by Griffin with the officer, arguing by Griffin with Arbogast, Griffin's statement regarding his penis, Griffin's noncompliance with law enforcement directives, Gamble's threats to use the Taser on Griffin if he did not get in and stay in the patrol vehicle, Arbogast's rendition of the offense to law enforcement, cursing by Griffin, the assertion by Griffin officers would beat and Taser him if they let him out of the car, and disparaging comments by Griffin regarding Arbogast.

6

Erica Carpenter is the custodian of Hays County Emergency 911 call system (3 RR 184). She identified a recording of some of the 911 calls placed in this case by both Griffin and Arbogast (3 RR 190). The recordings were admitted into evidence without objection (3 RR 190, 6 RR SX 14). Some of the calls in relation to the incident were lost due to a lightning strike which damaged a storage server used by the 911 call center (3 RR 192).

Hays County Deputy Sheriff Anthony Schafer responded to the scene of Griffin's arrest outside Griffin's home (3 RR 201). Griffin was intoxicated, noncompliant, and belligerent (3 RR 202). Schafer identified a recording made inside his patrol vehicle as Griffin was transported to jail (3 RR 204, 6 RR SX 15). The recording was admitted without objection (3 RR 204).[3] Arbogast never told Schafer that he was in pain or suffered pain (3 RR 218). The State rested (3 RR 223).

Tonya Adams is Griffin's fiancé (4 RR 7). She saw Griffin go toward the creek after the firetruck entered their neighborhood and park on the bridge (4 RR

---

[3] A 32 minute videotape from inside Deputy Schafer's squad car was admitted into evidence without objection by defense counsel (3 RR 204, 6 RR SX 15). The tape depicts Griffin's transport to jail from his home. The tape is replete with cursing by Griffin, challenges to the transporting officer regarding his arrest, assertions of contaminated blood in the squad car, disparaging comments regarding Arbogast, questioning the judgment of the arresting officers, and disrespectful comments toward law enforcement.

7

9). She saw Arbogast fall into the creek (4 RR 9). Griffin did not push him into the creek and was not near Arbogast when he fell into the creek (5 RR 10). She did observe Griffin bend down and attempt to help Arbogast out of the water (5 RR 11).

When he returned to the house, Adams noticed a scratch to Griffin's knee apparently sustained while attempting to pull Arbogast from the creek (4 RR 33). A photograph of the knee injury was admitted into evidence (4 RR 34, 6 RR DX 2).

After Arbogast fell in the water, Griffin returned home and called 911 to report that a fireman was in the creek (5 RR 12). When the authorities arrived, they did not want to talk to Adams (5 RR 12). Within two minutes of arriving, the authorities handcuffed Griffin and placed him in a patrol car (4 RR 13).

Griffin was home with his fiancé on the day of the incident when he saw a firetruck enter the subdivision at a high rate of speed and then park on a low water bridge (4 RR 38). He went to the bridge because he thought a wheel of the truck had fallen off the bridge (4 RR 41). Upon initially encountering Arbogast, Griffin did not know he was a fireman and asked him what he was doing (4 RR 42). Arbogast was frantic, agitated, and rude and responded for Griffin not to interfere (4 RR 42).

8

While they were on the bridge, Arbogast slipped and fell into the creek (4 RR 46).  Griffin never hit Arbogast or pushed him into the water (4 RR 47).  Griffin was six feet away from Arbogast when he fell in the creek (4 RR 71).  Despite Arbogast screaming that he could not swim, Griffin knew he was not likely to drown because the water was waist deep and Arbogast was standing on the bottom of the creek (4 RR 48).  On the second attempt, Griffin was able to pull Arbogast from the water and back onto the bridge (4 RR 50, 76).

After Arbogast was out of the water, Griffin returned home and called 911 to report the incident of a fireman falling into the creek (4 RR 50).  While speaking with the 911 operator, Griffin saw Arbogast fall off the bridge and into the creek a second time (4 RR 76-77).

A short time after calling 911, a deputy arrived and handcuffed Griffin when he walked out of his house (4 RR 52).  The deputy told him he was being arrested for assault (4 RR 53).  The deputy was not interested in hearing Griffin's side of the story and Griffin was transported to jail after having been repeatedly threatened with a Taser (4 RR 54-55).

Griffin was cross-examined extensively concerning the statements he made on the two recordings from the time of his arrest and transport to jail (4 RR 79-85, 6 RR SX 13 and SX 15).  The defense rested and both sides closed (4 RR 86).

9

The charge was read to the jury (4 RR 88). Argument was presented (4 RR 101, 104, and 118). The jury found Griffin guilty as charged in the indictment (4 RR 132). The jury was dismissed and cause reset for punishment before the court (4 RR 133).

Punishment was tried to the court (5 RR). The State did not call any witnesses. Lynn Broiller is a neighbor of Griffin's and he has never seen Griffin angry or violent (5 RR 7, 10). Rick Higgins has a business relationship with Griffin and he has never seen Griffin violent or disrespectful toward law enforcement (5 RR 13-19). James Lesko knows Griffin both professionally and personally and has never observed him cursing or drinking to excess (5 RR 21-24). Cassandra Walker is an employee of Griffin and she has never seen him intoxicated or disrespectful toward law enforcement (5 RR 25-33).

The court assessed punishment at two years, a fine of $2500.00, suspended the imposition of sentence for four years and placed Griffin on community supervision (CR 55, 5 RR 43). Terms and conditions of community supervision included 200 hours of community service, anger management, apology letters to the Wimberley Volunteer Fire Department and Arbogast as well agreed upon restitution (CR 55, 5 RR 43).

## Summary of the Argument

Two points of error are presented on direct appeal. The first point asserts the State failed to prove the complainant was a public servant as alleged in the indictment and found by the jury. The second point maintains Griffin was denied the effective assistance of counsel at trial due to multiple acts of deficient performance by trial counsel and ensuing prejudice.

The best indication Arbogast was not shown to be a public servant as that term is statutorily defined is language within the assault statute itself. Griffin was charged with assaulting a public servant under § 22.01(a)(1) and (b)(1). However, within the assault statute, the Legislature has recognized that volunteer firefighters, such as Arbogast, are "emergency service personnel" rather than "public servants" § 22.01(e)(1).

The assault statute provides in relevant part as follows: "Emergency services personnel includes firefighters, emergency services medical personnel as defined by Section 773.003, Health and Safety Code, and other individuals who, the course and scope of employment or as a volunteer, provide services for the benefit of the general public during emergency situations." *Id.* Griffin was not charged with assault on emergency services personnel under the statute proscribing such

conduct. § 22.01(a)(1) and (b)(5) (proscribing assault of emergency services personnel while the person is providing emergency services).

No rational trier of the facts could have found beyond a reasonable doubt that Arbogast was a "public servant" as alleged in the indictment. The State must prove the statutory elements that it has chosen to allege and not some other alternative statutory elements that it did not allege. This court should reform the judgment to an acquittal.

As shown during the hearing on the motion for new trial, trial counsel for Griffin engaged in multiple acts of deficient performance which resulted in prejudice. The acts and omissions now complained of include: failing to file a motion to suppress evidence recovered following Griffin's unlawful warrantless arrest; failing to object at trial to the admission of evidence recovered following Griffin's unlawful warrantless arrest; failing to perfect an offer of proof when the trial court excluded the complainant's statements during the defendant's testimony; failing to argue the complaint's statements to Griffin were admissible as excited utterances; failing to object to a hearsay statement in which Deputy Gamble testified Griffin's fiancé told him she did not see any of the events which occurred at the dam; failing to object to submission of a jury instruction relative to a presumption that the defendant knew the person assaulted was a public servant if

he was wearing a distinctive uniform or badge indicating the person's employment as a public servant; and failing to object to the absence of instructions required to be included in the jury charge under TEX. PEN. CODE § 2.05(a)(2)(A)-(D) relative to the presumption contained within the jury charge that the defendant knew the person assaulted was a public servant if he was wearing a distinctive uniform or badge indicating the person's employment as a public servant.

Griffin maintains that had counsel not engaged in the above mentioned acts of deficient performance, there is a reasonable probability the jury would not have convicted. Likewise, there is a reasonable probability the deficient acts of counsel resulted in Griffin's four year term of community supervision. Griffin suffered prejudice as a result of counsel's deficient performance during both phases of trial. He seeks a new trial in which he may be represented by constitutionally effective counsel.

**Point of Error One**

**The evidence is insufficient to support the conviction because a volunteer fireman is not a "public servant" but rather "emergency services personnel" as those terms are statutorily defined.**

The indictment alleges Arbogast was a public servant firefighter at the time of the assault. The court's charge required the jury to find Arbogast was a public servant firefighter in order to convict (4 RR 98). The court provided the jury a

13

definition of the term public servant which tracks the definition contained with TEX. PEN. CODE § 1.07(a)(41) (4 RR 96). The jury found Griffin guilty as charged (4 RR 132).

Arbogast testified he has been a volunteer for the Wimberley Volunteer Fire Department for 30 years (3 RR 32). He holds the title of Assistant Chief as awarded by his peers based on the hours he has volunteered (3 RR 32). He works maintenance for the Department (3 RR 32). On the day of the incident, Arbogast was driving a tender or tanker truck to take water to the scene of a fire (3 RR 36).

Arbogast was recalled by the State and testified the Wimberley Volunteer Fire Department is funded by and has a contract with an emergency services district (3 RR 181). The district is a taxing entity and a governmental agency (3 RR 181).[4] Finally, he stated that he is an agent and member of the volunteer fire department (3 RR 182).

The best indication Arbogast was not shown to be a public servant as that term is statutorily defined is language within the assault statute itself. Griffin was charged with assaulting a public servant under § 22.01(a)(1) and (b)(1). However,

---

[4] *See* TEX. CONST. art. III, Sec. 48-e (authorizing creation of emergency service districts for various purposes including rural fire prevention) and TEX. HEALTH & SAFETY CODE § 775.031(c) (authorizing district to contract for fire services).

14

within the assault statute, the Legislature has recognized that volunteer firefighters are "emergency service personnel" rather than "public servants" § 22.01(e)(1).

The statute provides in relevant part as follows: "**Emergency services personnel includes firefighters**, emergency services medical personnel as defined by Section 773.003, Health and Safety Code, and other individuals who, the course and scope of **employment or as a volunteer**, provide services for the benefit of the general public during emergency situations." *Id.* (Emphasis added). Griffin was not charged with assault on emergency services personnel under the statute proscribing such conduct. § 22.01(a)(1) and (b)(5) (proscribing assault of emergency services personnel while the person is providing emergency services).

The "emergency services personnel" provisions of the assault statute became effective on September 1, 2007, upon amendment of the assault statute. TEX. C.S. H.B. 495, 80th Leg., R.S. (2007). The amendments were necessary because the definition of "public servant" does not clearly include emergency services personnel who, in the course of their employment or as volunteers, respond to emergency situations. HOUSE COMMITTEE ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, TEX. C.S.H.B. 495, 80th Leg., R.S. (2007). The Bill Analysis further recognized the amendment adds a new category of individuals, "emergency

15

services personnel," against which assault causing bodily injury is a felony of the third degree. *Id.*

The State did not charge Griffin under the "emergency services personnel" portion of the assault statute. § 22.01(b)(5). The statute makes it clear that volunteer firefighters are not "public servants" under the portion of the assault statute for which Griffin was charged and convicted because they are deemed emergency services personnel. § 22.01(e)(1). Accordingly, no rational trier of the facts could have found beyond a reasonable doubt that Arbogast was a "public servant" as alleged in the indictment. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Under *Jackson,* the State must prove the statutory elements that it has chosen to allege and not some other alternative statutory elements that it did not allege. *Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011).

The Texas Penal Code defines public servant as:

A person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties:

(A) an officer, employee, or agent of government;

(B) a juror or grand juror; or,

(C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy; or,

16

(D) an attorney at law or notary public when participating in the performance of a governmental function; or,

(E) a candidate for nomination or election to public office; or,

(F) a person who is performing a governmental function under a claim of right although he is not legally qualified to do so. TEX. PEN. CODE § 1.07(a)(41).

The first rule of statutory construction is to presume that the legislature meant what it said. *State v. Vasilas*, 187 S.W.3d 486, 489 (Tex. Crim. App. 2006). The Code Construction Act instructs that words and phrases shall be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T CODE § 311.011(a). When determining the plain meaning of a statute, the court must employ the rules of grammar and usage, and presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible. *Liverman v. State*, ___ S.W.3d ___, ___, 2015 WL 5579418, at *3 (Tex. Crim. App. 2015). In addition, the Government Code provides that "[i]n construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws upon the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) title,

preamble, and emergency provision. TEX. GOV'T CODE § 311.023. Finally, the Penal Code instructs that the "rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code." *Hardy v. State*, 281 S.W.3d 414, 422 (Tex. Crim. App. 2009) (citing TEX. PEN. CODE § 1.05(a)).

In spite of the plain statutory language showing he is not statutorily a "public servant," if Arbogast is to be classified as a "public servant," he must fall under either sub (A) or sub (F) of the Penal Code definitions. § 1.07(a)(41)(A) or (F). A volunteer fireman is not an officer, employee, or agent of government.[5] First, the term "office" is defined as "the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public." *Delta Elec. Const. Co. v. City of San Antonio*, 437 S.W.2d 602, 606 (Tex. Civ. App.-- San Antonio 1969, writ ref'd n.r.e.). The Wimberly Volunteer Fire Department is not a political subdivision of government and Arbogast was not

---

[5] *See* TEX. PEN. CODE § 1.07(a)(24) defining the term "government" in the following manner: "(24) "Government" means: (A) the state; (B) a county, municipality, or political subdivision of the state; or (C) any branch or agency of the state, a county, municipality, or political subdivision."

shown to be an officer of the emergency services district which funds the Department.

Second, it is clear by using statutory construction, that a "volunteer" fireman is not a governmental employee under the Penal Code. The Legislature knew it could include volunteers into the "public servant" definition. As defined elsewhere under Texas law, an "[e]mployee" includes an officer, *volunteer*, or employee, a former officer, volunteer, or employee, and the estate of an officer, volunteer, or employee or former officer, volunteer, or employee of a local government. TEX. CIV. PRAC. & REM. CODE § 102.001; *see also Norrell v. Gardendale Volunteer Fire Dep't*, 115 S.W.3d 114, 117-118 (Tex. App.--San Antonio 2003 no pet.) (holding that a volunteer fireman is not an employee for purposes of the Tort Claims Act). Every word excluded from a statute must be presumed to have been excluded for a purpose. *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 540 (Tex. 1981). When the Legislature has carefully employed a term in one section of a statute, and has excluded it in another, it should not be implied where excluded. *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980). The Wimberly Volunteer Fire Department is not a political subdivision of government and Arbogast was not shown to be an employee of the emergency services district which funds the Department.

19

Lastly, a volunteer fireman is not an agent of the government. An agent is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex. App.--Houston [14th Dist.] 2003, no pet). The essential feature of agency is the right of control. *See Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex. App.--Houston [14th Dist.] 2005, pet. denied) (concluding no agency relationship where sales representative sold products of the defendant manufacturer and others on commission but manufacturer did not control details of sales representative's work). The right of control includes the right to dictate the means and details of the agent's performance. *Id.* Agency is generally a question of fact. *Id.* Although not directly answering the question of agency, the Fifth Circuit has found that a volunteer fireman is not a "state actor" and as such, not liable under federal law. *Yeager v. City of McGregor*, 980 F.2d 337, 342-344 (5th Cir. 1993). However, one of the key holdings in that matter was the finding that a municipality with a volunteer fire department lacks control over their actions. *City of McGregor*, 980 F.2d at 343. This means that no agency exists in situations such as here between Arbogast and the emergency services district which funds the Wimberly Volunteer Fire Department. As such, no finding that Arbogast was acting as a "public servant" can be divined under this subsection.

20

Arbogast was not "a person who is performing a governmental function under a claim of right although he is not legally qualified to do so." Governmental functions are "in the performance of purely governmental matters solely for the public benefit." *E. Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723, 730 (Tex. App.-- Houston [1st Dist.] 2009, no pet.). As found by the Fifth Circuit, firefighting in Texas is not a strictly "governmental function." *City of McGregor*, 980 F.2d at 340-41.

The State failed to present sufficient evidence from which a rational trier of the facts could have found Griffin assaulted a public servant as alleged in the indictment. This court should reform the judgment to an acquittal.

**Point of Error Two**

**Griffin was denied the effective assistance of counsel at trial.**

Trial counsel for Griffin engaged in multiple acts of deficient performance which resulted in prejudice. The acts and omissions now complained of include: failing to file a motion to suppress evidence recovered following Griffin's unlawful warrantless arrest; failing to object at trial to the admission of evidence recovered following Griffin's unlawful warrantless arrest; failing to perfect an offer of proof when the trial court excluded the complainant's statements during the defendant's testimony; failing to argue the complaint's statements to Griffin were admissible as

21

excited utterances; failing to object to a hearsay statement in which Deputy Gamble testified Griffin's fiancé told him she did not see any of the events which occurred at the dam; failing to object to submission of a jury instruction relative to a presumption that the defendant knew the person assaulted was a public servant if he was wearing a distinctive uniform or badge indicating the person's employment as a public servant; and failing to object to the absence of instructions required to be included in the jury charge under TEX. PEN. CODE § 2.05(a)(2)(A)-(D) relative to the presumption contained within the jury charge that the defendant knew the person assaulted was a public servant if he was wearing a distinctive uniform or badge indicating the person's employment as a public servant.

Griffin maintains that had counsel not engaged in the above mentioned acts of deficient performance, there is a reasonable probability the jury would not have convicted. Likewise, there is a reasonable probability the deficient acts of counsel resulted in Griffin's four year term of community supervision. Griffin suffered prejudice as a result of counsel's deficient performance during both phases of trial.

Griffin filed a motion for new trial complaining of counsel's performance and the ensuing prejudice (CR 70). A hearing was held on the motion for new trial and trial counsel testified (1 RR). At the conclusion of the hearing, the trial court denied the motion for new trial (CR 110, 1 RR 40).

22

## The Standard of Review

Under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant in a criminal case is entitled to the reasonably effective assistance of counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). Pursuant to the standard set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 698 (1984), a defendant seeking relief as a result of trial counsel's inept performance must first show that counsel's performance was deficient and then demonstrate that this deficient performance prejudiced the defense. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992). The *Strickland* test is applicable to ineffective assistance claims at all phases of both capital and non-capital trials. *Craig v. State*, 825 S.W.2d 128, 129 (Tex. Crim. App. 1992). For an error on counsel's part to reach this level, there must be a reasonable probability, a probability sufficient to undermine confidence in the outcome of the trial, that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex. Crim. App. 1991). The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

The Supreme Court has held that counsel's performance is measured against an "objective standard of reasonableness," *Strickland*, 466 U.S. at 688, "under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). The Supreme Court has held, however, that a defendant need not show that counsel's deficient performance more likely than not altered the outcome in the case:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome... In every case, the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results. *Strickland*, 466 U.S. at 694-696.

Although the adequacy of counsel's performance is gauged by the totality of the representation afforded the accused, "[s]ometimes a single error is so substantial that it alone causes the attorney's assistance to fall below the sixth amendment standard." *Nero v. Blackburn*, 597 F.2d 991, 994 (5th Cir. 1979). As the First Court of Appeals has remarked, "[t]o ignore a grievous error simply because it is single, while granting relief where multiple errors cumulatively reach the same magnitude, would be contrary to the reasons that caused the creation of the doctrine of ineffective assistance of counsel." *Cooper v. State*, 769 S.W.2d 301, 305 (Tex. App. – Houston [1st Dist.]. 1989); *see also Ex parte Felton*, 815

S.W.2d 733, 736 (Tex. Crim. App. 1991)(single error was of sufficient magnitude to render trial counsel's performance ineffective).

While Griffin has the burden to overcome the "strong presumption" that counsel's challenged conduct "might be considered sound trial strategy," *Bell v. Cone*, 535 U.S. 685, 698 (2000), this does not mean that counsel may insulate his challenged conduct from review merely by claiming his conduct was "strategic." Whether counsel's conduct was in the first instance a matter of strategy is a question of fact, but whether it was objectively reasonable is a question of law, *Collier v. Turpin*, 155 F.3d 1277, 1290 (11th Cir. 1998), a legal conclusion to which no deference is paid. *Strickland*, 466 U.S. at 698 (issue of ineffective assistance of counsel is not a question of "basic, primary, or historical fact," and "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact"); *Westley v. Johnson*, 83 F.3d 714, 720 (5th Cir. 1996) ("*Strickland* makes it clear that determinations of ineffectiveness of counsel are not factual findings of this nature which call for federal court deference ...").

The Supreme Court has stressed that strategic choices are entitled to deference only to the extent they are based on informed decisions. *Strickland*, 466 U.S. at 690-691. Because there is a "crucial distinction between strategic judgments and plain omissions," *Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir.

1992), a strategy based on counsel's misunderstanding of the law or a failure to fully investigate the facts is not objectively reasonable. *Moore v. Johnson*, 194 F.3d 586, 610 (5th Cir. 1999).

This Court is "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Id.* at 604. "The mere incantation of 'strategy' does not insulate attorney behavior from review." *Hardwick v. Crosby*, 320 F.3d 1127, 1186 (11th Cir. 2003); *see also Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984)("even deliberate trial tactics may constitute ineffective assistance of counsel if they fall outside the wide range of professionally competent assistance"); *Washington v. Hofbauer*, 228 F.3d 689, 704 (6th Cir. 2000)("the label 'strategy' is not a blanket justification for conduct which otherwise amounts to ineffective assistance of counsel"); *Profitt v. Waldron*, 831 F.2d 1245, 1248 (5th Cir. 1987)("This measure of deference [to counsel's claims of trial strategy] must not be watered down into a disguised form of acquiescence.").

An attorney must have a firm command of the facts of the case as well as the governing law before he can render reasonably effective assistance of counsel. *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983). A claimed trial strategy

premised upon an incorrect understanding of controlling case law cannot be an objectively reasonable trial strategy. *See Ex parte Welborn*, 785 S.W.2d 391, 395 (Tex. Crim. App. 1990) (unreasonable trial strategy not to object to inadmissible hearsay in pen packets where counsel felt material could be introduced "in a more damaging manner"); *Stone v. State*, 17 S.W.3d 348, 353 (Tex. App.-Corpus Christi 2000, pet. ref'd) (unreasonable trial strategy to elicit defendant's prior murder conviction where counsel did not know it was too remote for impeachment purposes); *Gifford v. State*, 980 S.W.2d 791, 794 (Tex. App. – Houston [14th Dist.] 1998, pet. ref'd) (unreasonable trial strategy for counsel to fail to object to inadmissible victim impact testimony); *Cooper*, 769 S.W.2d at 305 (unreasonable trial strategy to call defendant to testify before jury as to finality of prior conviction where State then cross-examined him as to 14 other priors where counsel did not know that he was entitled to a hearing outside jury's presence).

**The Acts of Deficient Performance**

**1. Counsel failed to file a motion to suppress evidence recovered following Griffin's unlawful warrantless arrest.**

**2. Counsel failed to object at trial to the admission of evidence recovered following Griffin's unlawful warrantless arrest.**

27

Philip Arbogast testified that Griffin struck him in the neck, he lost his balance, and fell off a dam into Lone Man Creek (3 RR 42). After climbing out of the creek, Arbogast called on his radio to report what had happened to him (3 RR 44). Hays County Deputy Sheriff David Gamble responded to Arbogast's report (3 RR 109). Arbogast told him what had happened and then followed Gamble and another deputy to Griffin's house and identified Griffin as his assailant (3 RR 114).

Deputy Gamble came to a conclusion regarding the occurrence after speaking with Arbogast (3 RR 144). He went to Griffin's home and encountered him on the sidewalk (3 RR 147). Upon questioning, Griffin responded to Gamble "fuck you get off my property" (3 RR 148). After telling Griffin twice to place his hands behind his back, Gamble handcuffed him and led him to the squad car for the offense of assault on a public servant (3 RR 148). Griffin was agitated as Gamble led him to squad car (3 RR 149). When asked if he had any weapons, Griffin responded "I have my fucking dick in my pants, would you like for me to shove it up your ass?" (3 RR 150). Gamble threatened to use a Taser on Griffin twice when he did not enter the squad car in the manner directed (3 RR 151, 179).

A 32 minute videotape from inside Deputy Schafer's squad car was admitted into evidence without objection by defense counsel (3 RR 204, 6 RR SX 15). The tape depicts Griffin's transport to jail from his home. The tape is replete with

28

cursing by Griffin, challenges to the transporting officer regarding his arrest, assertions of contaminated blood in the squad car, disparaging comments regarding Arbogast, questioning the judgment of the arresting officers, and disrespectful comments toward law enforcement.

Hays County Deputy Sheriff Anthony Schafer assisted in Griffin's arrest (3 RR 201). He described Griffin as being belligerent, noncompliant, and aggressive (3 RR 202, 206).

A 23 minute videotape from the scene of the arrest was admitted into evidence without objection by defense counsel (3 RR 155, 6 RR SX 13). The videotape contains Gamble's initial encounter with Griffin upon his arrest, arguing by Griffin with the officer, arguing by Griffin with Arbogast, Griffin's statement regarding his penis, Griffin's noncompliance with law enforcement directives, Gamble's threats to use the Taser on Griffin if he did not get in and stay in the patrol vehicle, Arbogast's rendition of the offense to law enforcement, cursing by Griffin, the assertion by Griffin officers would beat and Taser him if they let him out of the car, and disparaging comments by Griffin regarding Arbogast.

A police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual, *Henry v. United States,* 361 U.S. 98 (1959), and (2) the arrest falls within one of the exceptions specified in TEX.

29

CRIM. PROC. CODE arts. 14.01 through 14.04 *Self v. State,* 709 S.W.2d 662, 665 (Tex. Crim. App.1986); *Stull v. State*, 772 S.W.2d 449, 451 (Tex. Crim. App. 1989).

Here, Griffin's warrantless arrest was not permissible under any of the statutory exceptions allowing an arrest without a warrant. The offense was not committed within the presence or view of the arresting officers. Art. 14.01. The offense was not committed within the presence or view of a magistrate. Art. 14.02. The officer did not have probable cause to believe Arbogast would suffer further bodily injury at the hands of Griffin. Art. 14.03(a)(2). There was no showing Griffin was about to escape from his home. Art. 14.04.

While suppression of evidence is left to the court, it is the duty of defense attorney to attempt through all legal means to have evidence detrimental to his client suppressed. *Mitchell v. State*, 762 S.W.2d 916, 920 (Tex. App.—San Antonio 1988, pet. ref'd). Counsel is ineffective when he fails to object to the fruits of an unlawful arrest. *Perkins v. State*, 812 S.W.2d 326, 329 (Tex. Crim. App. 1991); *Boyington v. State*, 738 S.W.2d 704, 708 (Tex. App.—Houston [1st Dist.] 1985, no pet.).

Despite the unlawfulness of Griffin's warrantless arrest, counsel at trial did not file a motion to suppress or object at trial to the fruits of the unlawful arrest.

30

Those were acts of deficient performance. The fruits of the unlawful arrest include the officer's statements and observations at the arrest. The fruits additionally include Griffin's statements as contained on the videotape recordings from the patrol vehicle.

Trial counsel conceded Griffin's arrest was unlawful and the two dash cam videos were harmful to Griffin (1 RR 13). Counsel claimed to have made a strategic decision not to seek suppression of the videos and the officer's testimony because they demonstrated how poorly Griffin was treated by the officers (1 RR 13).

Counsel's claimed strategic decision finds no support in the record. The videos and testimony reflect Griffin was treated with courtesy and respect by the officers. However, Griffin is depicted as belligerent, noncompliant, and disrespectful. Absent record support for his claimed strategy, the strategy was objectively unreasonable as a matter of law.

**3. Counsel failed to perfect an offer of proof when the trial court excluded the complainant's statements during the defendant's testimony.**

**4. Counsel failed to argue the complainant's statements to Griffin were admissible as excited utterances.**

31

Arbogast testified that he parked his tanker truck on a dam to draw water to be taken to a fire (3 RR 40). He was approached on the dam by Griffin who said "this is fucking private land and fucking private water" (3 RR 40). Arbogast stated he told Griffin that the State of Texas owns the water and it was needed for a nearby structure fire (3 RR 41).

Griffin testified he went to the creek to check on the truck because he thought the right front wheel had fallen off the dam (4 RR 41). He saw Arbogast and did not immediately recognize he was a fireman (4 RR 41). Griffin described Arbogast's demeanor as frantic, agitated, and rude (4 RR 42). Griffin asked Arbogast what he doing and Arbogast responded "Don't interfere with . . . (4 RR 42). At this point, the State's hearsay objection was sustained (4 RR 42). Upon again seeking Arbogast's response to Griffin's inquiry at the creek, the State's hearsay objection was once again sustained (4 RR 43). Counsel failed to perfect an offer of proof or argue Arbogast's statements were admissible as excited utterances.

An attorney must have a firm command of the facts of the case as well as the governing law before he can render reasonably effective assistance of counsel. *Lilly*, 656 S.W.2d at 493. Here, upon excluding Arbogast's statements to Griffin, counsel for Griffin failed to perfect the error by making an offer of proof as

32

required under TEX. R. EVID. 103(a)(2). He likewise failed to argue that due to Arbogast's frantic and agitated state, his statements to Griffin were admissible as excited utterances under TEX. R. EVID. 803(2). Both omissions were acts of deficient performance.

During the hearing on the motion for new trial, counsel claimed he did not attempt to perfect a bill or argue Arbogast's statements on the bridge were excited utterances because the testimony had already been admitted through cross-examination of Arbogast (1 RR 15-16). The record does not support counsel's assertion. During cross-examination of Arbogast the same matter excluded was not developed or presented (3 RR 63-117 and 128-137). Absent record support for his claimed strategy, the strategy was objectively unreasonable as a matter of law.

**5. Counsel failed to object to a hearsay statement in which Deputy Gamble testified Griffin's fiancé told him she could not see any of the events which occurred at the dam.**

On direct examination, the prosecutor asked Deputy Gamble what information he learned from Griffin's fiancé at the scene (3 RR 153). Without objection, Gamble was permitted to testify that the fiancé told him that she did not see any of the events which occurred at the dam between Griffin and Arbogast (3 RR 153-154).

33

Tonya Adams is engaged to Griffin and lives with him in Wimberley (4 RR 6). On the day of the instant event, she was home with Griffin and they were on the deck of their home (4 RR 8). They saw a firetruck enter the neighborhood at a high rate of speed and proceed to a low water dam (4 RR 8). She saw Griffin go to investigate what the driver of the truck was doing and the next thing she knew, the fireman was in the creek (4 RR 9). Griffin did not push the fireman into the creek and was not near him when he fell in the creek (4 RR 10). She saw Griffin bend down and try to help the fireman from the creek (4 RR 11). Griffin then returned to the house and called 911 to report a fireman in the creek (4 RR 12). She noticed scratches to Griffin's knee after he tried to pull the fireman from the water (4 RR 33).

Deficient performance is shown when counsel allows the jury to hear prejudicial and clearly inadmissible evidence because such evidence could serve no strategic value. *Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006). In the instant cause, there could have been no strategic reason for counsel to have failed to object to Gamble's hearsay testimony that Adams told him she did not see the events at the dam. Adams was a critical defense witness and her testimony was undermined by inadmissible hearsay from Gamble. The failure to object to that evidence was an act of deficient performance.

During the hearing on the motion for new trial, counsel testified he did not object to Gamble's hearsay testimony because it proved Gamble was a liar and untruthful in his testimony (1 RR 18).  Once again counsel's claimed strategy was objectively unreasonable.  The improperly admitted testimony undermined the defense evidence presented by Adams that she viewed the incident and Griffin did not push Arbogast into the creek (4 RR 9-11).

**6. Counsel failed to object to submission of a jury instruction relative to a presumption that the defendant knew the person assaulted was a public servant if he was wearing a distinctive uniform or badge indicating the person's employment as a public servant.**

**7. Counsel failed to object to the absence of instructions required to be included in the jury charge under TEX. PEN. CODE § 2.05(a)(2)(A)-(D) relative to a presumption contained within the jury charge that the defendant knew the person assaulted was a public servant if he was wearing a distinctive uniform or badge indicating the person's employment as a public servant.**

Arbogast testified that at the time of the incident, he was wearing a t-shirt and blue jeans (3 RR 51, 105).  He explained that no particular uniform is required and volunteers show up for service in "whatever" (3 RR 106).  The t-shirt he was wearing said "Wimberley Fire and Rescue" on both the front and the back (3 RR

35

59, 6 RR SX 11-12).  Arbogast never identified himself as a fireman to Griffin (3 RR 106).  Griffin testified that upon initially encountering Arbogast, he did not know he was a fireman (4 RR 41).

After both sides closed, the court read the charge to the jury (4 RR 88).  The charge included an instruction that the defendant is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant (4 RR 97).  See TEX. PEN. CODE § 22.01(d).  No objection was voiced to the charge by defense counsel (4 RR 87).

Counsel's failure to object to the presumption within the charge presents two acts of deficient performance.  First, the presumption was not warranted because Arbogast was not wearing a distinctive uniform or badge.  As he attested, volunteers wear "whatever" and he was wearing a t-shirt and blue jeans.  *Compare Gokey v. State*, 314 S.W.3d 63, 67 (Tex. App.—San Antonio 2010, pet. ref'd, untimely filed) (finding presumption applicable when deputy was in full uniform, driving a marked patrol vehicle, and badge prominently displayed).  A failure to object to a charge which is not supported by the evidence is an act of deficient performance.  *Summitt v. Blackburn*, 795 F.2d 1237, 1245 (5th Cir. 1986).

36

The second act of deficient performance involved counsel's failure to object to the absence of the instructions required by TEX. PEN. CODE § 2.05(a)(2)(A)-(D). The statute provides that if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

> (A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;
>
> (B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;
>
> (C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and
>
> (D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose. § 2.05(a)(2)(A)-(D).

As long as section 2.05 is incorporated into a jury charge that contains a presumption, the presumption will be deemed a permissive one. *Tottenham v. State,* 285 S.W.3d 19, 31 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd). Thus, a section 2.05 instruction converts a mandatory presumption into a permissive presumption. *Jimenez v. State*, 419 S.W.3d 706, 717 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Without a section 2.05 instruction, general language

instructing the jury that it must find the defendant guilty beyond a reasonable doubt to convict and that the prosecution has the duty of proving each element beyond a reasonable doubt does not remedy the error of a mandatory presumption. *See Id., Garrett v. State,* 159 S.W.3d 717, 721 (Tex. App. – Fort Worth 2005) *affirmed* 220 S.W.3d 926 (Tex. Crim. App. 2007).

Here the absence of the § 2.05 cautionary instructions created an unconstitutional mandatory presumption that Griffin knew Arbogast was a public servant. The erroneous instruction could have been avoided had counsel timely and properly voiced and objection to the charge. That failure was an act of deficient performance. *See Ex parte Drinkert*, 821 S.W.2d 953, 956 (Tex. Crim. App. 1991) (finding trial counsel's failure to object to an erroneous jury charge was an act of deficient performance).

During the hearing on the motion for new trial, counsel testified he did not object to the absence of the § 2.05 instructions because he thought the evidence was sufficient to prove Griffin knew Arbogast was a firefighter (1 RR 22). Griffin submits counsel's explanation is objectively unreasonable. Mandatory presumptions are not permitted in a criminal case and counsel's failure to object relieved the State of its obligation to prove an essential element of the offense – knowledge by Griffin of Arbogast's status.

38

**Prejudice to Griffin as a Result of Counsel's Deficient Acts and Omissions**

The prejudice prong of *Strickland* requires this Court to determine whether counsel's objectively deficient conduct was sufficient to undermine its confidence in the verdict; that is, whether there is a reasonable probability that, but for this objectively deficient conduct, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694; *Kyles v. Whitley*, 514 U.S. 419, 430 (1995). The prejudice Griffin must show is by less than a preponderance of the evidence because the reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different. *United States v. Dominguez Benitez*, 542 U.S. 74, 82 n. 9 (2004). In assessing prejudice, this Court is obligated to consider the cumulative effect of the multiplicity of counsel's errors. *Strickland*, 466 U.S. at 690.

The Sixth Amendment does not require counsel to invent a defense or act in an unethical manner. It does, however, require counsel to put the prosecution's case to the test through vigorous partisan advocacy. *Haynes v. Cain*, 272 F.3d 757, 764 (5th Cir. 2001). Counsel must make a significant effort, based on reasonable investigation and logical argument, to defend his client. *Patrasso v. Nelson*, 121 F.3d 297, 303-304 (7th Cir. 1997).

Simply put, the cumulative effect of counsel's errors caused a breakdown in the adversarial process that our system counts on to produce just results sufficient to undermine this Court's confidence in the outcome of Griffin's trial. *Strickland*, 466 U.S. at 696.

The videotapes and arrest conduct which should have been challenged by counsel as the fruit of an unlawful warrantless arrest were the centerpiece of the State's case against Griffin. The videotapes were played in their entirety for the jury (3 RR 155, 204, 6 RR SX 13 and 15). The existence and content of the tapes as well as Griffin's arrest conduct were repeatedly stressed by the prosecutor upon seeking a conviction from the jury (4 RR 122-128).

The initial exchange between Griffin and Arbogast was critical to Griffin's defense that he did not assault Arbogast. When the State's hearsay objection to Griffin's testimony was sustained, counsel made no effort to show the evidence admissible under a well-established hearsay exception. He further failed to perfect an error in the exclusion of the evidence by making a proffer of proof. Had the evidence been allowed, it would have shown Arbogast to have been hostile and aggressive upon his initial encounter with Griffin.

For no discernable reason, counsel failed to voice an objection upon the State eliciting hearsay evidence that Griffin's fiancé did not see the events at the

40

dam. Her testimony was critical to Griffin's defense and undermined by inadmissible evidence simply because counsel failed to object as he should have at trial.

Finally, an unconstitutional mandatory presumption was submitted to the jury on an essential element of the offense. Counsel made no effort to ensure the jury was properly instructed on the elements of the offense and the State's burden of proof.

This Court should conclude that counsel's multiple acts of deficient conduct cause grave concern as to the fairness of the underlying proceeding. Griffin submits that had counsel discharged his duty, there is a reasonable probability the result of the proceeding would have been different. Griffin is entitled to a new trial in which he may be afforded the effective assistance of counsel.

## Prayer

Wherefore, premises considered, Gary Lee Griffin, prays this Honorable Court will reverse the judgment of conviction and reform to an acquittal, remand to the trial court for a new trial, or enter any other relief appropriate under the facts and the law.

41

Respectfully submitted,

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

1411 West Avenue
Suite 100
Austin, TX 78701

(512) 469-7943
(512) 474-5594 – facsimile
wetzel_law@1411west.com

Attorney for Appellant
Gary Lee Griffin

## Certificate of Compliance

This pleading complies with TEX. R. APP. P. 9.4. According to the word count function of the computer program used to prepare the document, the pleading contains 8,964 words excluding the items not to be included within the word count limit.

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

## Certificate of Service

This is to certify that a true and correct copy of the foregoing pleading was emailed to counsel for the State, Jennifer Stalbaum, Assistant Criminal District Attorney, at her email address of jennifer.stalbaum@co.hays.tx.us on this the 20th day of November, 2015.

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

42